158 P.3d 54 (2007)
STATE of Washington, Respondent,
v.
Michael Allen BOYD, Petitioner.
State of Washington, Petitioner,
v.
Lee William Giles and Maureen Elizabeth Wear, Respondents.
Nos. 79371-9, 79339-5.
Supreme Court of Washington, En Banc.
Argued March 13, 2007.
Decided May 17, 2007.
*56 Barbara L. Corey, Kathleen Proctor, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Petitioner.
*57 Hugh Kirk Birgenheier, Kathleen Proctor, Pierce County Prosecuting Attorneys Office, Michael Edward Schwartz, Law Offices of Michael Schwartz, Mary Katherine Young High, Tacoma, WA, for Respondents.
Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Laura E. Mate, Federal Public Defender's Office, Seattle, Colin Fieman, Tacoma, for Amicus Curiae-National Association of Criminal Defense Lawyers and Washington Association of Criminal Defense Lawyers.
Seth Aaron Fine, Snohomish County Prosecutor's Office, Everett, Margaret M. Zimmer, The National Center for Missing & Exploited Children, Alexandria, Amicus Curiae-National Center for Missing & Exploited Children.
Pamela Beth Loginsky, Washington Association of Prosecuting Attorneys, Olympia, Amicus Curiae-Washington Association of Prosecuting Attorneys.
C. JOHNSON, J.
¶ 1 This case involves the extent to which defense discovery of child pornography evidence may be restricted under Criminal Rule (CrR) 4.7 in child sex offense prosecutions. These consolidated cases involve direct review of discovery orders by two Pierce County Superior Court judges. In neither case does the State argue that access to the images should be denied; its claim is that the defendants' attorneys are not entitled to copies of the evidence. In State v. Boyd, the trial court denied the request for copies, with the State retaining sole possession of a computer hard drive and other photos and evidence and permitting access only at a state facility at times convenient to the State. In State v. Giles and State v. Wear, the trial court granted the defendants' request for copies, subject to protective orders. We reverse the order in Boyd, and affirm the orders in Giles and Wear.[1]

FACTS
State v. Boyd
¶ 2 The Pierce County prosecutor charged Michael Boyd with 28 crimes involving five victims. Some of these victims are allegedly depicted in hundreds of images seized by the State. In addition, the State claims to possess, on a computer hard drive, tens of thousands of "commercial" images of unidentified minors engaged in sexually explicit conduct; images that were recovered from a computer or storage devices allegedly owned by Boyd. 10/10/06 Report of Proceedings (RP) at 40. At least 11 of the counts are supported by this evidence, stored on the computer hard drive. Supp. Br. of Pet'r, App.; Supp. Decl. for Determination of Probable Cause. Boyd's defense counsel moved to compel the State to provide a "mirror image" of the hard drive to enable independent testing by a defense expert.
¶ 3 Judge Larkin denied the motion, reasoning that Boyd had "no right to unlimited access to evidence," as would presumably result from a copy, only "reasonable access." The trial judge suggested the request was not material, stating that the defense was "asking for everything . . . because we don't know what the evidence is going to show." 10/10/06 RP at 36-37. Judge Larkin entered an order allowing defense counsel to access a mirror image of Boyd's hard drive, but only in a State facility, during two sessions, and only through the State's operating system and software. State's Consolidated Supp. Br., App. B-C. Under the terms of the order, defense counsel, the defense investigator, a defense expert, and Boyd would be permitted "a substantial amount of time" to view the images, after which the drive would be returned *58 to the State. State's Consolidated Supp. Br., App. C.
State v. Giles and State v. Wear
¶ 4 Lee Giles and Maureen Wear are charged as codefendants. Each is charged with many crimes including possession of child pornography. The State alleges that 21 videotapes belonging to Giles and Wear depict them engaged in criminal acts against children. At least 12 of the counts charged against Wear are allegedly supported by evidence in seven videos. Clerk's Papers (CP) at 105-06. At least 16 of the counts against Giles are allegedly supported by video evidence. CP at 60-61. The tapes are not in digital format and some were allegedly created by Giles and Wear. There is no suggestion that the videos ever existed in digital form on a computer. Police also recovered photographs and magazines that support charges of possession of child pornography. Among the evidence was child pornography that Giles, a former Pierce County police officer, apparently obtained from the sheriff department's evidence locker.
¶ 5 Giles moved under CrR 4.7(a)(1)(v) to compel the prosecutor to provide copies of photographs and videos the State intended to use at trial. Wear joined in this motion. The State offered to provide defense counsel with an opportunity to view the tapes, to allow the defendant to be present, and to enable counsel to speak privately with the defendant during viewings. The State provided a detailed narrative of the videotapes' contents in discovery. The court granted the motion, subject to a protective order, which the State appealed.

ANALYSIS
¶ 6 The first issue in dispute is which section of CrR 4.7 applies under these circumstances. The defense argues that CrR 4.7(a) controls, and under that section, they are entitled to copies of the evidence that supports the criminal charges. The argument is based on the claim that the evidence is necessary to effectively represent the clients and prepare a defense.
¶ 7 CrR 4.7(a), in relevant part, provides as follows:
(a) Prosecutor's Obligations.
(1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing:
. . . .
(v) any books, papers, documents, photographs, or tangible objects, which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belonged to the defendant;
¶ 8 The State argues that CrR 4.7(e) should guide our analysis here. It reasons that any obligation to provide copies is a product of judicial discretion under CrR 4.7(e). CrR 4.7(e) provides:
(e) Discretionary Disclosures.
(1) Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant of the relevant material and information not covered by sections (a) [Prosecutor's Obligations], (c) [Additional Disclosures Upon Request and Specification] and (d) [Material Held by Others].[2]
CrR 4.7(e) deals with disclosure of material and information under circumstances other than those described in CrR 4.7(a)(1), namely, where the prosecutor does not intend to use the material or information in the hearing or trial and where the evidence was not obtained from or does not belong to the defendant. Significantly, it places the burden of showing reasonableness and materiality on the defendant.
*59 ¶ 9 CrR 4.7(a)(1)(v) identifies what material and information must be disclosed. The rule, at the very least, requires disclosure of "any books, papers, documents, photographs, or tangible objects" which the prosecutor intends to use at trial. CrR 4.7(a)(1)(v). This rule could not be any clearer in establishing what the State must disclose, and this is precisely the type of evidence involved in these cases. The evident purpose of the disclosure requirement is to protect the defendant's interests in getting meaningful access to evidence supporting the criminal charges in order to effectively prepare for trial and provide adequate representation. The evidence is offered to substantiate the criminal charges. We hold that CrR 4.7(a) controls the issue raised in these cases.
¶ 10 Having addressed CrR 4.7(a)'s applicability, we come to the State's argument that it need not make copies. The State argues that even if CrR 4.7(a) controls, that rule does not require prosecutors to duplicate every single item they intend to use at trial and provide a copy to the defense. State's Consolidated Supp. Br. at 9-10. It argues that disclosure means only acknowledging the existence of seized evidence. State's Consolidated Supp. Br. at 10 (citing State v. Penn, 23 Wash.App. 202, 596 P.2d 1341 (1979)).[3] The State supports its argument by asserting that withholding copies advances the child's interests by limiting the risk of victimization through further dissemination of the sexual crimes depicted in the evidence.
¶ 11 CrR 4.7 does not define "disclose." But the general usage of "disclose," the policies underlying the rules, and the provisions of CrR 4.7 indicate that "disclose" includes making copies of certain kinds of evidence.
¶ 12 The principles underlying CrR 4.7 require meaningful access to copies based on fairness and the right to adequate representation. The discovery rules "are designed to enhance the search for truth" and their application by the trial court should "insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage." State v. Boehme, 71 Wash.2d 621, 632-33, 430 P.2d 527 (1967). Under CrR 4.7(a) the burden is on the State to establish, not merely claim or allege, the need for appropriate restrictions.[4] The defendant does not have to establish that effective representation merits a copy of the very evidence supporting the crime charged. To adopt the State's position is to restrict the defendant's right to potentially exculpatory evidence on the State's mere allegation that the evidence involves contraband.
¶ 13 We have recognized the policies underlying CrR 4.7 and indicated what facts must be revealed for disclosure to be meaningful.
""In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protections of persons, *60 effective law enforcement, the adversary system, and national security." "
State v. Yates, 111 Wash.2d 793, 797, 765 P.2d 291 (1988) (emphasis added) (quoting Criminal Rules Task Force, Washington Proposed Rules of Criminal Procedure 77 (West Pub'g Co. ed.1971)). To deny access to copies does not accord with these policies.
¶ 14 Courts have long recognized that effective assistance of counsel, access to evidence, and in some circumstances, expert witnesses, are crucial elements of due process and the right to a fair trial. The Fifth Amendment to the United States requires that prosecutors make available evidence "favorable to an accused . . . where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Sixth Amendment right to effective assistance of counsel advances the Fifth Amendment's right to a fair trial. That right to effective assistance includes a "reasonable investigation" by defense counsel. See Strickland v. Washington, 466 U.S. 668, 684, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); In re Pers. Restraint of Brett, 142 Wash.2d 868, 873, 16 P.3d 601 (2001). It also guarantees expert assistance if necessary to an adequate defense. State v. Punsalan, 156 Wash.2d 875, 878, 133 P.3d 934 (2006). Supporting the right to effective representation, CrR 4.7(h)(4) provides that notwithstanding protective orders, the evidence must be disclosed "in time to permit . . . beneficial use."
¶ 15 These rights illuminate the substance hinted at by the definition of "disclose." "[D]isclosure" is defined as "[t]he act or process of making known something that was previously unknown; a revelation of facts." Black's Law Dictionary 477 (8th ed.2004). Yet obviously, the revelation of facts must be meaningful, harmonizing with the right to effective assistance, in order for defense counsel to play the role described by the court in Strickland:
That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.
466 U.S. at 685, 104 S.Ct. 2052 (emphasis added). Where the nature of the case is such that copies are necessary in order that defense counsel can fulfill this critical role, CrR 4.7(a) obliges the prosecutor to provide copies of the evidence as a necessary consequence of the right to effective representation and a fair trial.[5]
¶ 16 Giles and Wear involve situations where copies are necessary. The culpability of the acts depicted may vary based on when the photos or films were taken, by whom, and what they actually display. Defense counsel must consider these and other defenses in reviewing substantial quantities of evidence. In Giles and Wear, at least 16 and 12 of the counts, respectively, are supported by evidence contained on 21 videotapes. In Boyd, several hundred images allegedly depict criminal acts involving known victims; tens of thousands allegedly involve unknown victims. Preparation will likely require revisiting the evidence many times before and during trial. In these cases, the evidence is either in the form of photos or tapes or images on a computer hard drive. No distinction is made under CrR 4.7(a)(1)(v) between the specific types of tangible evidence the prosecutor must disclose and the disclosure mandate applies equally to all evidence.
¶ 17 In Boyd, given the nature of the evidence, adequate representation requires providing a "mirror image" of that hard drive; enabling the defense attorney to consult with computer experts who can tell how the evidence made its way onto the computer. Forensic review might show that someone other than the defendant caused certain *61 images to be downloaded. It may indicate when the images were downloaded. It may reveal how often and how recently images were viewed and other useful information based on where the images are stored on the device. See Amicus Br. of WACDL at 10-14. Expert analysis of the application or program used to acquire the images may be useful. Providing a copy enables the expert to test that application or program using the same type and version of computer operating system as was used by the defendant, a difference that may alter how the program runs, stores data, and so forth. Amicus Br. of WACDL, App. A at 9-10. Analysis may also reveal that the images are not of children. See, e.g., Knellinger, 471 F.Supp.2d at 647. This analysis requires greater access than can be afforded in the State's facility.
¶ 18 Preparation may require lengthy access even where there are few images. See United States v. Frabizio, 341 F.Supp.2d 47 (D.Mass.2004) (defense expert needed to reconstruct government expert's work). The need for copies may flow also from constraints on experts such as access to the necessary tools and sufficient time. See United States v. Hill, 322 F.Supp.2d 1081, 1091-93 (C.D.Cal.2004) (distinguishing the demands of narcotics analysis from that of zip disks), aff'd on other grounds, 459 F.3d 966 (9th Cir.2006). These concerns are relevant to Boyd, where the forensic expert intends to use particular diagnostic equipment from his lab and must review tens of thousands of images from potentially disparate sources.[6]
¶ 19 Judge Larkin erred in denying copies to Boyd, evidently as a result of analyzing Boyd's request under CrR 4.7(e). The trial judge said there was "no such thing" as a "right to unlimited access to evidence," only "reasonable access." 10/10/06 RP at 36-37. He described the request as "the old shotgun approach," suggesting that defendant might be able to show the materiality of further access after first viewing the evidence in the State's office. 10/10/06 RP at 37. Similarly, the State argues that Judge Worswick failed to require a showing of materiality and reasonableness.
¶ 20 To require this showing is to ignore the inherent materiality of the disclosure mandated by CrR 4.7(a). Disclosure is required in large part because the prosecutor intends to use the evidence "in the hearing or trial." CrR 4.7(a)(1)(v). It is this purpose that explains the materiality of the defendants' requests. Though the evidence in Giles and Wear is on videotape, CrR 4.7(a)(1)(v) does not justify any distinction; the disclosure mandate applies equally to all types of evidence.
¶ 21 Having established the scope of CrR 4.7(a) and the principles supporting the provision of copies, the rule also provides for recognition of other interests involved in the proceeding. It does so by explicitly providing for the authority to subject disclosure to protective orders. CrR 4.7(a)(1).
¶ 22 The provision for protective orders in CrR 4.7(a) makes sense if one concludes the defense is entitled to copies of the evidence. It is the possession of evidence implicating privacy that often explains the use of a protective order. See, e.g., Rhinehart v. Seattle Times Co., 98 Wash.2d 226, 242-43, 654 P.2d 673 (1982) (barring newspaper from publishing information derived from copies of tax returns and other discovered materials); Barfield v. City of Seattle, 100 Wash.2d 878, 885, 676 P.2d 438 (1984) (protective order issued to prevent defense attorney's dissemination of officer records). If such orders are uncommon in criminal cases, that may be due to the ability to analyze the evidence while it remains in the State's lab (i.e., with ballistics and drug testing), because analysis is not *62 compromised by the presence of a State officer, see, e.g., United States v. Noel, 708 F.Supp. 177 (W.D.Tenn.1989) and United States v. Pollock, 402 F.Supp. 1310 (D.Mass. 1975), because there is little risk of dissemination, or because that risk is addressed by the attorneys' professional responsibilities.
¶ 23 In cases such as these, safeguarding the interests of the victims requires conditions that account for the ease with which the evidence can be disseminated. The defendant should be allowed access to the evidence only under defense counsel's supervision. Defense counsel is personally and professionally responsible for any "unauthorized" distribution of or access to the evidence. Access by non-counsel must be preceded by court order. The evidence must be secured and inaccessible to anyone besides defense counsel. The evidence must be promptly returned at the end of the criminal proceeding. Access may only be for purposes of the action. Any order should also prohibit the making of additional copies, require that a copy of the order be kept with the evidence, bar its digitization, and obligate the defense to pay the reasonable cost of duplication. It is also appropriate to require a firewall between the Internet and any computer used to access the protected materials during its inspection, to return the evidence if representation is terminated, and to clear any computer used in the examination of this evidence of its traces before that computer is accessible for other purposes. Judge Worswick's order included most of these provisions.
¶ 24 The unrebutted declaration in amicus brief of WACDL describes additional safeguards taken by at least one computer forensic firm. Amicus Br. of WACDL, App. A at 17-18. These include asking the government to provide serial numbers for copies, wiping hard drives on completion of the case, having law enforcement verify the data's destruction, and providing a report to the court affirming that the data was destroyed. Its policies include never making copies of the evidence and keeping media in digitally secure safes.
¶ 25 Judge Worswick's order also safeguards the defendant's interests. The order gives defense counsel the opportunity for ongoing access before and during trial. It allows for access by consulting experts, investigators, or other defense staff and permits defense counsel to involve the defendant in reviewing the evidence.
¶ 26 Though this case focuses on the criminal rules and protective orders, these echo an attorney's professional responsibilities, including a requirement that material coming into the attorney's possession be utilized only for the limited purpose or purposes of client representation.[7] The criminal rules provide the right to discovery of materials and evidence relative to the criminal charges and proceedings. The responsibilities that inhere in the rules provide additional safeguards that limit the use of such materials. And the imposition of additional protective conditions appropriate to evidence, such as involved in these cases, underscore the attorney's responsibility to safeguard the evidence in a way that protects the victim's interests in limiting the use of this type of evidence to only those purposes necessary to effectively represent the client.
¶ 27 The State adds an argument that copies enhance the risk of annoyance or embarrassment to the victims. A risk of annoyance or embarrassment is an attendant consequence of trial. See Dreiling v. Jain, 151 Wash.2d 900, 93 P.3d 861 (2004) (involving business's confidential documents); In re Det. of Campbell, 139 Wash.2d 341, 355-56, 986 P.2d 771 (1999) (addressing defendant's privacy interest); Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wash.2d 205, 214, 848 P.2d 1258 (1993) (risk of trauma and to child's privacy in sexual assault case). To try the defendants almost necessarily means this evidence will be presented in open court, referenced in the examination and testimony of witnesses, and discussed in opening and closing statements. We can address this risk *63 of annoyance or embarrassment without limiting discovery of the evidence that the prosecutor intends to present at trial. The trial judge has authority to address the manner in which witnesses are deposed and examined. Furthermore, the access provided by CrR 4.7(a)(1)(v) does not create a risk where there was none. Some risk of dissemination accompanies its handling by those associated with the prosecution. Even if the right to a fair trial could be satisfied while denying copies only to the defense, the cost to justice here would be disproportionate to the benefit.[8]
¶ 28 Finally, the State argues that providing the defendants with copies of the materials sought would constitute sexual exploitation of children contrary to RCW 9.68A.050.[9] We are not convinced the statute was ever intended to apply to the trial process. Furthermore, the legislative policies expressed in RCW 9.68A.001 (describing the importance of preventing sexual exploitation of children) can be safeguarded with a carefully crafted protective order.

CONCLUSION
¶ 29 With a restrictive protective order, copies can be maintained in a manner that protects the interests of the victims while ensuring defense counsel the opportunity to adequately prepare. We affirm the orders in Giles and Wear. We reverse the order in Boyd; Boyd's counsel should be provided a mirror image of the hard drive and copies of the other evidence subject to an appropriate protective order. We remand to the trial courts for further proceedings.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, BARBARA A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS, and BOBBE J. BRIDGE, JJ.
J.M. JOHNSON (dissenting).
¶ 30 The plain language of criminal rule (CrR) 4.7(a) does not require that the State provide the defense with copies of the evidence it intends to use at trial. Rather, CrR 4.7(a) requires disclosure, which is satisfied if the State provides the defense with notice of its intended evidence and access thereto sufficient for the defense to prepare. In its discretion, a trial court may order the State to provide the defense with copies of its evidence in a particular case. However, when dealing with child pornography, such an order should be issued only after a particularized showing of need sufficient to overcome the important interests weighing against duplicating and disseminating such pornographic contraband. Because no such showing of need was made by the defense for respondent Giles or respondent Wear, I dissent from the majority's decision to affirm orders issued by the trial court requiring copies of all pornographic evidence in those cases. For similar reasons, I also dissent from the majority's decision to reverse the trial court's discretionary determination not to order the State to provide copies of the child pornography evidence in the case of petitioner Boyd.
A. CrR 4.7(a) Requires Notice and Access, Not Copies
¶ 31 The majority correctly concludes that the main provision governing access to intended *64 evidence in these cases is CrR 4.7(a).[1] Majority at 59. However, the majority misinterprets the plain language of this rule. CrR 4.7(a) provides, in relevant part:
Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information . . . any books, papers, documents, photographs, or tangible objects, which the prosecuting attorney intends to use in the hearing or trial. . . .
CrR 4.7(a)(1)(v) (emphasis added). In short, prosecutors have an obligation to "disclose" to the defendant any materials or objects which they intend to use at trial. CrR 4.7(a)(1)(v). However, to "disclose" does not mean to "provide copies." The rule could easily be rewritten to require the latter, but such amendment to our court rules should be properly proposed and carefully considered by this court.
¶ 32 The term "disclose" is not defined in CrR 4.7 or elsewhere in the rules, so reference to its dictionary definition is appropriate. The dictionary provides that to "disclose" means "to expose to view . . . to make known." Webster's Third New International Dictionary 645 (2002). Thus, the rule's plain language requires the State, at least, to inform defense counsel of the existence of materials it intends to use at trial. See State v. Penn, 23 Wash.App. 202, 204, 596 P.2d 1341 (concluding State complied with disclosure obligation under CrR 4.7(a)(1)(v) by providing defendant with statement listing "narcotics paraphernalia in general" as a tangible object intended for use at trial), review denied, 92 Wash.2d 1026 (1979);[2]State v. Smith, 15 Wash.App. 716, 721, 552 P.2d 1059 (1976) ("CrR 4.7(a)(1)(v) requires the prosecution to reveal the existence and nature of tangible evidence intended for use at trial.") (emphasis added). Making the evidence known or exposing it to view may also, logically, entail making the materials available for inspection. However, providing the defense with its own copies of all such materials, to peruse or use at its convenience, is not required to comply with the mandate "to expose [the evidence] to view" or "to make [it] known" to the defense. Webster's Third New International Dictionary 645 (2002). Accordingly, the plain language of CrR 4.7(a) does not require that the State always provide the defense with copies of all intended evidence. The majority errs in holding to the contrary. See majority at 59.
¶ 33 Because the plain language of CrR 4.7(a) does not support the majority's position that copies are mandatory, it relies instead on "the policies underlying the rules." Majority at 59-60. However, where the plain language of a court rule is unambiguous, the rule is to be enforced in accordance with that language. Gourley v. Gourley, 158 Wash.2d 460, 466, 145 P.3d 1185 (2006). As explained above, the plain language of CrR 4.7(a) does not require copies. Because there is no ambiguity on this point, it is inappropriate to engage in amendment by construction based on underlying policies. Gourley, 158 Wash.2d at 466, 145 P.3d 1185.
¶ 34 Even assuming such construction was found to be appropriate, the majority's analysis is flawed. The majority primarily focuses its argument on two principles: (1) fairness and (2) the right to adequate representation. See majority at 59. Specifically regarding fairness, the majority states that "[t]he discovery rules `are designed to enhance the search for truth' and their application by the trial court should `insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage.'" Majority at 59 (quoting *65 State v. Boehme, 71 Wash.2d 621, 632-33, 430 P.2d 527 (1967)).[3] The majority also cites to this court's statement in State v. Yates, 111 Wash.2d 793, 797, 765 P.2d 291 (1988) (quoting Criminal Rules Task Force, Washington Proposed Rules of Criminal Procedure 77 (West Pub'g Co. ed.1971)) that:
"In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protections of persons, effective law enforcement, the adversary system and national security."
Majority at 59.
¶ 35 I agree with the majority that CrR 4.7(a) should be interpreted in a manner which "insure[s] a fair trial to all concerned" and provides for discovery that is "as full and free as possible consistent with" other competing policy concerns. Majority at 59. However, I do not agree that this concern for fairness requires that the plain language of CrR 4.7(a) be distorted to create a mandate that the State provide the defense with copies of all materials the State intends to use at trial in every case. Rather, I conclude that acknowledging the existence of the evidence and making it reasonably available for inspection, as is required by the plain disclosure language of CrR 4.7(a), satisfies the fairness concerns cited by the majority. In these cases, my conclusion is supported by concerns for the constitutional rights of the victims as well as the illegal nature of the child pornography evidence.
¶ 36 Regarding the right to adequate representation, the majority notes that the "right to effective assistance includes a `reasonable investigation' by defense counsel" and "also guarantees expert assistance if necessary to an adequate defense." Majority at 60. The majority argues that CrR 4.7(a) must be construed in a manner which "harmoniz[es] with the right to effective assistance." Majority at 60. Thus, the majority concludes that "[w]here the nature of the case is such that copies are necessary in order that defense counsel can fulfill [its] critical role, CrR 4.7(a) obliges the prosecutor to provide copies of the evidence. . . ." Majority at 60.
¶ 37 I agree that CrR 4.7(a) must be applied in a manner that comports with defendants' constitutional rights, including the right to effective assistance of counsel. However, as the majority appears to concede, copies are not necessary in every case for defense counsel to effectively prepare. While there may be some instances "[w]here the nature of the case" may make such copies necessary, majority at 60, this possibility does not justify construing CrR 4.7(a) to impose a mandatory requirement upon the State to provide copies in all cases. Instead, whether the State must provide copies is a matter that should be left to the discretion of the trial court in each case.[4]
¶ 38 Moreover, I reject the majority's suggestion that copies should be deemed necessary in all cases involving child pornography evidence. Majority at 60-61. That the constitutional rights of criminal defendants do not require that copies be provided in every case involving child pornography has been expressly confirmed by many federal courts, which have substantial experience with the subject due to the unfortunate frequency of interstate and international trafficking in child pornography.[5] Federal courts have held that, on its face, section 504 of the Adam *66 Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act), Pub.L. No. 109-248, 120 Stat. 587 (July 27, 2006) (codified at 18 U.S.C. § 3509(m)), which requires courts to deny "any request by the defendant to copy . . . any property or material that constitutes child pornography . . . so long as the Government makes the property or material reasonably available to the defendant," offends neither the Fifth or Sixth Amendment.[6]United States v. Knellinger, 471 F.Supp.2d 640, 642-43 (E.D.Va.2007); United States v. O'Rourke, 470 F.Supp.2d 1049, 1053 (D.Ariz.2007); United States v. Johnson, 456 F.Supp.2d 1016, 1019-20 (N.D.Iowa 2006). Moreover, even prior to the enactment of the above federal statute, two federal circuit courts concluded that it was not error for a trial court to deny a defendant's motion for copies of child pornography evidence. See United States v. Horn, 187 F.3d 781, 792 (8th Cir. 1999); United States v. Kimbrough, 69 F.3d 723, 730-31 (5th Cir.1995); see also United States v. Husband, 246 F.Supp.2d 467, 469 (E.D.Va.2003) (refusing to order that "contraband [such as child pornography] be distributed to defendant or his counsel" and concluding that the government "met its obligation under Rule 16 . . . by allowing access to the tape" at issue).
¶ 39 In sum, I reject the majority's conclusion rewriting CrR 4.7(a) to obligate the State to provide the defense with copies of "any books, papers, documents, photographs, or tangible objects, which the prosecuting attorney intends to use in the hearing or trial. . . ." CrR 4.7(a)(1)(v). Instead, I would hold, in accordance with the plain language of the rule, that the State satisfies its burden to "disclose" under CrR 4.7(a) by alerting the defense to the existence of the materials or objects, which the State intends to use, and making this evidence reasonably available.
B. Although CrR 4.7(a) Does Not Require Copies, a Trial Court May Order Copies in its Discretion, Subject to Appropriate Protective Conditions
¶ 40 Absent a manifest abuse of discretion, decisions regarding the scope of discovery lie within the sound discretion of the trial court. State v. Norby, 122 Wash.2d 258, 268, 858 P.2d 210 (1993) (citing State v. Pawlyk, 115 Wash.2d 457, 470-71, 800 P.2d 338 (1990)). Thus, although CrR 4.7(a) does not require the State to provide the defense with copies of the materials it intends to use at trial, see Part A, supra, the trial court has discretion to order such copies in appropriate circumstances. Any such order should be reviewed for an abuse of discretion.
¶ 41 A proper exercise of trial court discretion in these circumstances requires a showing of need for copies requested by the defense. It would be manifestly unreasonable for a trial court to order the State to go beyond providing notice and access absent any proof that such disclosure is inadequate to meet the defense's needs.[7] Particularly where the evidence at issue is child pornography, I would hold that a trial court's order to provide copies must be supported by a particularized showing of need sufficient to overcome the numerous, important interests that weigh against copying and disseminating such contraband. These interests include *67 crime prevention, protection of victims in general and child victims of sex offenses in particular, and protection of individual privacy interests. Consideration of these countervailing interests is both reasonable and necessary to ensure that trial courts do not run afoul of the spirit, if not the letter, of Washington law by ordering the State to provide copies of child pornography evidence. See, e.g., RCW 9.68A.050 (felony to duplicate and/or disseminate child pornography). Ultimately, I conclude that these considerations dictate against ordering copies in most cases.
¶ 42 First, to order the State to duplicate and disseminate child pornography evidence runs counter to this State's criminal law. For obvious example, RCW 9.68A.050 criminalizes "Dealing in depictions of minor engaged in sexually explicit conduct." This statute reads as follows: A person who:
(1) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct; or
(2) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct is guilty of a class C felony punishable under chapter 9A.20 RCW.
RCW 9.68A.050. Similarly, RCW 9.68A.070 criminalizes the knowing possession of depictions of minors engaged in sexually explicit conduct. See also RCW 9.68A.120(1) ("All visual or printed matter that depicts a minor engaged in sexually explicit conduct" is subject to seizure and forfeiture.). In light of the above statutes, it is clear that a court order requiring the State to copy and distribute child pornography evidence conflicts with our State's criminal law.
¶ 43 Ordering the State to provide copies of child pornography evidence also implicates the interests protected by article I, section 35 of our state constitution. This provision expresses our people's intent that crime victims be treated with "due dignity and respect." CONST. art. I, § 35. To order duplication and dissemination of child pornography evidence in a child sex offense trial affords the child victim neither dignity nor respect. Instead, it further harms the child by increasing the audience for the child's victimization as well as magnifying the risk that the materials will be made available to the public at large. See New York v. Ferber, 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (each duplication of a piece of child pornography results in yet another "permanent record of the children's participation and the harm to the child is exacerbated by their circulation"). Thus, a court order to provide copies contradicts the policy embodied in our state constitution.
¶ 44 In addition to protecting victims in general, Washington law expressly provides for the protection of child victims of sex offenses in particular. Our legislature has concluded that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance" and that the "care of children is a sacred trust." RCW 9.68A.001. Our legislature has also expressed an intent "to insure that all child victims and witnesses of crime are treated with . . . sensitivity, courtesy, and special care." RCW 7.69A.010. It is difficult to comprehend how a court order compelling the State to duplicate and disseminate child pornography evidence can be reconciled with the preservation of the State's "sacred trust" regarding child sex offense victims. RCW 9.68A.001. Hence, such an order contradicts another aspect of our State's public policy.
¶ 45 Finally, to compel the State to provide copies of child pornography evidence also implicates the strong right of privacy enshrined in our state constitution. See CONST. art. I, § 7. There can be no question that duplication and dissemination of pornographic images of a child victim constitutes an extreme invasion of that child's private affairs. See Adam Walsh Act § 501(2)(D) ("Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse."). Thus, a court order to automatically provide copies of child sex pictures runs counter to this separate provision of our state constitution.
*68 ¶ 46 Ultimately, in light of the above interests, I believe that mandating notice to defense counsel and adequate access for inspection is the appropriate approach to take in most cases involving child pornography evidence. My conclusion is supported by the fact that this approach has already been adopted at the federal level and by some of our sister states. See 18 U.S.C. § 3509(m); Ariz. R.Crim. P. 15.1(j); Cal.Penal Code § 1054.10. As summarized by Congress: "It is imperative to prohibit the reproduction of child pornography in criminal cases so as to avoid repeated violation and abuse of victims, so long as the government makes reasonable accommodations for the inspection, viewing, and examination of such material for the purposes of mounting a criminal defense." Adam Walsh Act § 501(2)(F).
¶ 47 Additionally, in those limited circumstances where a trial court determines that an order to provide copies is appropriate, I would hold that the trial court must subject defense receiving copies to stringent protective conditions. Such conditions should be imposed by issuing a protective order pursuant to CrR 4.7(h)(4).[8] While protective orders are to be issued under this rule upon a showing of cause by the State, see note 8, supra, such a showing can easily be made in all cases involving child pornography evidence, given the many interests weighing against duplication and dissemination, discussed above. The majority provides a helpful outline of some of the particular conditions that should be imposed. Majority at 61-62.
C. The Record in State v. Giles and Wear Did Not Establish Need for Copies to Prepare the Defense
¶ 48 The trial court in the cases of Giles and Wear required the State to provide copies of all child pornography evidence to the defense. Majority at 57. However, the record reveals that neither Giles nor Wear made a particularized showing of need for these copies sufficient to overcome the numerous interests weighing against copies. Counsel for both respondents offered the trial court only generalized allegations of unfairness, unconstitutionality, and inconvenience to support their demands for copies. See Verbatim Transcript of Proceedings (VTP) (Sept. 20, 2006) at 5-11, 19-21, State v. Giles and Wear, Nos. 06-1-03604-4 and 06-1-03616-8 (Pierce County Super. Ct., Wash.). Neither defense counsel presented any documentation or testimony as to his or her need for copies of particular materials to prepare the cases. Cf. United States v. Frabizio, 341 F.Supp.2d 47 (D.Mass.2004) (defendant's successful motion to compel copies of child pornography evidence supported by affidavit from retained expert detailing proposed analysis of particular items of evidence and costs associated with being required to conduct analysis at government facility). Moreover, neither counsel even argued there was a need for copies to facilitate any expert preparation or testimony. Giles' counsel admitted that he had never attempted to view any of the State's evidence prior to bringing the motion to compel. VTP (Sept. 20, 2006) at 10-11.
¶ 49 The State reasonably responded with an offer to provide private access to the child pornography for defense counsel, their clients, and their experts. VTP (Sept. 20, 2006) at 14, 17-18, 22. The State argued that such access, rather than copies, was the appropriate approach in light of the risk of harm to the child victims. VTP (Sept. 20, 2006) at 12. The State also pointed out that the evidence sought by Giles and Wear consisted primarily of 21 videotapes made by the defendants themselves. VTP (Sept. 20, 2006) at 13-14. Based on this record, I would hold that the trial court abused its discretion in both Giles and Wear by ordering the State to provide the defense with copies of the child pornography evidence. There is no evidence of actual need in the record to support the trial court's orders. Thus, I dissent from the majority's decision to affirm these orders. See majority at 63.
*69 D. The Record in State v. Boyd Does Not Support Finding an Abuse of Discretion
¶ 50 In the case of Boyd, the trial court denied defense counsel's motion to compel copying of the pornography in question. Majority at 57. I would affirm the trial court. Boyd's counsel did make a particularized claim of need for copies to prepare Boyd's defense but provided no factual support for her claim. In particular, counsel argued that her expert(s) needed a mirror image of Boyd's computer's hard drive, as well as copies of all the photographs to be used by the state, to effectively assist in preparing Boyd's defense. See Verbatim Report of Proceedings (VRP) (Oct. 10, 2006) at 9-12, 32, State v. Boyd, No. 04-1-05178-1 (Pierce County Super. Ct., Wash.). However, counsel submitted no documentation or testimony supporting the need to have her own copies, as opposed to having reasonable access to the evidence within a state facility. The State responded with an offer to provide reasonable, private access to the evidence for defense counsel, her client, and her expert. VRP (Oct. 10, 2006) at 25-26, 28. The State argued that this was the better approach in light of the compelling need to protect the victims in this case. VRP (Oct. 10, 2006) at 30-31.
¶ 51 Ultimately, the trial court, in the exercise of its discretion, determined that the defense's showing of need was insufficient to justify an order to provide copies. VRP (Oct. 10, 2006) at 36-37. Instead, the court ordered the State to provide the defense with access to the evidence sufficient to accommodate the defense's trial preparation needs. VRP (Oct. 10, 2006) at 37-41; see also Mot. for Discretionary Review, App. A (Protective Order Regarding Def.'s Access to Child Pornography, State v. Boyd, No. 04-1-05178-1 (Pierce County Super. Ct., Wash. Oct. 17, 2003)). In light of the record, the trial court's decision cannot be deemed manifestly unreasonable. Thus, the trial court did not abuse its discretion, and the majority's reversal contradicts our long-standing rule of deferring to trial courts on such matters.

CONCLUSION
¶ 52 The majority has erroneously construed the plain language of the "disclosure" rule, CrR 4.7(a), to require the State to provide the defense with copies of the pornography evidence it intends to use at trial. Copies of child pornography should be provided only when a trial court determines, in its discretion, that the defense's particularized showing of need outweighs the substantial policy interests weighing against duplication and dissemination of such pornography contraband. These interests of victims, and child sex crime victims especially, are clearly expressed in our State's constitution and legislation but have been grievously disregarded by the majority. Accordingly, I dissent.
NOTES
[1] Wear filed a motion to join and adopt and incorporate arguments of consolidated party under Rules of Appellate Procedure 10.1(g). We grant that motion. The State filed a motion to strike appendices A-F of amici brief of Washington Association of Criminal Defense Lawyers and National Association of Criminal Defense Lawyers (hereafter WACDL). We passed the motion to the merits and now deny it. On March 5, 2007, Boyd, Giles, and Wear moved to strike the amicus brief of the National Center for Missing and Exploited Children (NCMEC). That motion was passed to the merits and is denied. On March 9, 2007, amicus WACDL filed an answer to the amicus brief of the NCMEC. On March 12, 2007, the State moved to strike amicus WACDL's answer. We passed the motion to the merits and now deny it. On March 13, 2007, Boyd moved to join and adopt the amicus brief of WACDL. We grant this motion.
[2] CrR 4.7(e)(2) allows the court to condition or deny disclosure based on a balancing test:

(2) The court may condition or deny disclosure authorized by this rule if it finds that there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals or unnecessary annoyance or embarrassment, resulting from such disclosure, which outweigh any usefulness of the disclosure to the defendant.
[3] Penn does not support the State's argument. In Penn, the defendant sought suppression, claiming she was not adequately notified of the prosecutor's intent to admit specific items by the prosecutor's listing of "narcotics paraphernalia in general" in the discovery document. The court rejected this argument because she failed to seek more specific information under CrR 4.7(c)(1). Penn therefore involved the question of what constitutes adequate notice of tangible objects in the prosecutor's possession or control. It did not address the sufficiency of the access she would have received.
[4] This burden mirrors the approach under federal law prior to passage of the Adam Walsh Child Protection and Safety Act of 2006, H.R. 4472, § 504, amending section 3509 of Title 18 of the United States Code. See Cervantes v. Cates, 206 Ariz. 178, 76 P.3d 449 (2003); United States v. Isa, 413 F.2d 244, 248 (7th Cir.1969). The Act altered both the burden and the standard of proof. Since its passage courts sometimes refuse to provide copies without also requiring government supervision. Compare United States v. O'Rourke, 470 F.Supp.2d 1049 (D.Ariz.2007) (defendant failed to meet burden under the Walsh Act), with United States v. Knellinger, 471 F.Supp.2d 640 (E.D.Va.2007) (finding production of a copy necessary even under the act). Even in denying the defendant's request, the court in O'Rourke agreed that the hard drive was "material." If it needed only satisfy Federal Rule of Criminal Procedure 16, the court "would grant the defense team possession of the hard drive. . . ." O'Rourke, 470 F.Supp.2d at 1054 n. 1.
[5] The rules emphasize that protective orders must not compromise effective assistance. CrR 4.7(h)(3) contemplates entrusting defense counsel with custody of the evidence. That custody may be subject to "terms and conditions" provided by the court. But disclosure must be "in time to permit . . . beneficial use thereof." CrR 4.7(h)(4).
[6] The rules appear to reflect an understanding that copies are required under CrR 4.7(a)(1)(v). Under CrR 4.5(c), the court must provide a checklist to the parties "to ensure that all requests, errors and issues" are considered at the omnibus hearing. The checklist should be "substantially" like that provided in CrR 4.5(h). In that checklist among the "applications or motions" available to the defendant is this: "To permit inspection and copying of any books, papers, documents, photographs or tangible objects which the prosecution: (a) Obtained from or belonging to the defendant; or (b) Which will be used at the hearing or trial." CrR 4.5(h)(20) (emphasis added). This language, other than the explicit reference to "copying," appears drawn directly from CrR 4.7(a)(1)(v).
[7] For example, CrR 4.7(h)(3), entitled "Custody of Materials", provides in part: "[a]ny materials furnished to an attorney pursuant to these rules shall remain in the exclusive custody of the attorney and be used only for the purposes of conducting the party's side of the case, unless otherwise agreed by the parties or ordered by the court." (Emphasis added.)
[8] In this regard we note that the State provides no example where an attorney has failed to protect the evidence, though such orders have been issued outside Pierce County in similar cases. See, e.g., Hill, 322 F.Supp.2d at 1092-1094. Amicus Brief of Washington Association of Prosecuting Attorneys (WAPA) cites a number of cases in support of its argument for "an exceptionally high initial showing" of relevance before copies are provided. Amicus Br. of WAPA at 10-11 n. 4. Though some of these cases involve misconduct by attorneys, none involve defense counsel mishandling evidence.
[9] That statute, entitled "Dealing in depictions of minor engaged in sexually explicit conduct," reads as follows:

A person who:
(1) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct; or
(2) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct is guilty of a class C felony punishable under chapter 9A.20 RCW.
RCW 9.68A.050.
[1] Subsection (h)(4) of CrR 4.7, which provides for protective orders, is also relevant, as is further discussed below.
[2] The majority attempts to limit the usefulness of Penn by stating that "[i]t did not address the sufficiency of the access [the defendant] would have received" to the contraband evidence at issue. Majority at 59 n. 3. This assertion, however, does not alter the fact that the Penn court addressed the State's duty to "disclose to the defendant . . . any tangible objects" under CrR 4.7(a)(1)(v) and concluded that including the description "`narcotics paraphernalia in general'" in its discovery documents was sufficient to satisfy the state's burden. 23 Wash.App. at 204, 596 P.2d 1341. Thus, the case supports the conclusion that even mere acknowledgement of the existence of evidence may satisfy the state's burden of disclosure under CrR 4.7(a) in some cases.
[3] The majority's use of this quote appears to overlook the emphasis placed on victims' rights by Washington law. See, e.g., CONST. art. I, § 35. Ensuring "a fair trial to all concerned" requires consideration of the victims' interests as well as those of the parties.
[4] Although the plain language of CrR 4.7(a) does not obligate the State to provide copies of evidence to the defense, trial courts have discretion to order such copies in appropriate circumstances. In deciding whether and how to exercise this discretion, trial courts must take into account defendants' constitutional rights. Thus, "[w]here the nature of the case is such that copies are necessary," majority at 60, a trial court can require the State to provide copies, subject to protective order.
[5] That the federal courts have reached this conclusion is made even more significant by the fact that they, unlike this court, are not constitutionally required to consider the rights of crime victims. CONST. art. I, § 35.
[6] In enacting the "Child Pornography Prevention" portion of the Adam Walsh Act, Congress found, among other things, that the "distribution . . . and possession of child pornography . . . is harmful to the physiological, emotional, and mental health of the children depicted [therein] and has a substantial and detrimental effect on society as a whole." Adam Walsh Act § 501(1)(A). Congress also found that persons who initially seek and distribute child pornography purely on an intrastate basis are "likely to enter the interstate market in child pornography in search of additional child pornography, thereby stimulating demand in the interstate market in child pornography," id. at § 501(1)(D)(i), and are likely to contribute their own materials to this market. Id. at § 501(1)(D)(ii).
[7] The majority states that to require a showing of need by the defendant to support an order for copies "is to ignore the inherent materiality of the disclosure mandated by CrR 4.7(a)." Majority at 61. However, it is not my position that a defendant must make a showing of need to obtain disclosure of the evidence the State intends to use at trial. The State must automatically comply with its obligation to disclose its evidence under CrR 4.7(a). However, the State should not be required to go beyond its mandatory burden of providing notice and access unless and until there is a showing of need by the defense.
[8] CrR 4.7(h)(4) provides:

Upon a showing of cause, the court may at any time order that specified disclosure be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit the party's counsel to make beneficial use thereof.