[No. 36620-3-I. Division One. February 2, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. ORLANDO WADE AMES, *Appellant*.

*Thomas M. Kummerow* of *Washington Appellate Project,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rod H. Scarr, Deputy,* for respondent.

A<small>GID</small>, J. — Orlando Wade Ames appeals his conviction for assault in the second degree. He contends that the trial court repeatedly abused its discretion by admitting irrelevant and cumulative evidence and that his sentence as a persistent offender of life in prison without parole violates the constitutional prohibition against cruel and unusual punishment. Because the trial court did not abuse its discretion in making its various evidentiary rulings and Ames's sentence does not violate the prohibition against cruel and unusual punishment, we affirm.

## FACTS

On December 7, 1994, Ames was charged with one count of second degree assault for beating George Pioquinto. At trial, which began on April 17, 1995, the jury heard testimony by Detx Ketkxounaroun that he had seen Ames strike Pioquinto 40 or 50 times. Officers who came upon the scene saw Ames kicking Pioquinto and took a statement from Ketkxounaroun at the scene. After the jury returned its verdict of guilty, the State filed a supplemental information charging Ames as a persistent offender and alleging that he had two prior convictions for first and second degree robbery. A day later, the jury found that Ames was a persistent offender. On April 28, the trial court sentenced

Ames to a mandatory term of life without the possibility of parole under the Persistent Offender Accountability Act.[1]

## DISCUSSION

### I. Evidentiary Rulings

■ ■ Ames first contends the trial court abused its discretion when it admitted into evidence the bloodstained clothing he was wearing at the time of his arrest. He argues that, because he does not dispute that an altercation occurred, the clothing was irrelevant and prejudicial.[2] We disagree. While Ames did not dispute that an altercation of some sort occurred, he maintained that he acted in self defense. The clothing was relevant to show the nature of the attack and that Ames was the primary aggressor. It was especially relevant in light of testimony from the officers who came upon the scene that Ames had no cuts or bruises on his own face or hands at the time of his arrest and that they found a club in his back pocket. The trial court did not abuse its discretion when it admitted the bloodstained clothing into evidence.

■ Ames also contends the trial court abused its discretion when it admitted the following testimony by Detective David W. Kannas:

Q: Did you notice anything else about the defendant?

A. I noticed he was very muscular, that he had calloused knuckles.

The defense objected "as to relevance" and the trial court

---

[1]*See* RCW 9.94A.030(27); RCW 9.94A.120(4).

[2]Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. ER 403 permits a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or it is needlessly cumulative. The admission of relevant evidence is within the sound discretion of the trial court and will be reversed only for abuse of discretion. *State v. Mak*, 105 Wn.2d 692, 702, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom. Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash. 1991), *aff'd* 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993).

overruled. It was not an abuse of discretion for the trial court to do so. First, the defense objection was to the statement as a whole; it did not point specifically to the comment about Ames's knuckles.[3] Second, despite Ames's argument to the contrary, the detective's testimony was relevant in that it tended to show that Ames had the strength and ability to inflict the very serious injuries Pioquinto sustained on the night of the beating.[4] The trial court properly admitted the detective's statement about Ames's physical condition at the time of the underlying incident.

Ames next asserts that the trial court erred in admitting the testimony of Detx Ketkxounaroun about the fight he observed between two men at a bus stop on Rose Street and Rainier Avenue on the night of December 3, 1994. He argues that that testimony was irrelevant because the witness was unable to positively identify Ames in court. When Ketkxounaroun was asked at trial whether he recognized "the black guy in the courtroom here," he replied, "I don't remember." But there is no question that the man police arrested at the scene of the crime was the man to whom Ketkxounaroun's testimony referred. Ketkxounaroun was still present at the scene when police arrived and gave police a statement at that time. He was able to describe what had happened before police arrived, including that he had

---

[3]*See State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986) (to preserve an objection for appeal, a party must make clear the basis for the objection at trial). Any error in admitting this single comment about Ames's knuckles would, moreover, be harmless in light of the overwhelming evidence of guilt in this case. *See State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

[4]The trial court properly sustained the defense objection to the statement that followed and directed the jury to disregard it, i.e., that the detective believed that the callouses were those of a boxer.

Q: Go ahead.

A: I noticed his calloused muscles (sic).

Q. Calloused what?

A. Knuckles, what I would attribute to those of a boxer.

That admonishment was sufficient to caution the jury not to draw that inference from the fact that Ames's knuckles were calloused.

seen the man whom police arrested hit and kick "the Mexican guy" 40 or 50 times on his head and body. He estimated that the beating had lasted about five minutes and stated that he did not see the victim do anything but yell and try to get away. This testimony was probative of both the nature and the degree of the crime. The fact that Ketkxounaroun did not recognize the perpetrator in court did not make his testimony irrelevant.

■ Ames also contends that the trial court abused its discretion when it admitted into evidence photographs showing Pioquinto in the hospital, arguing that one photograph would have sufficed to show the extent of the injuries and, therefore, the remaining photographs were cumulative.[5] Photographs of an injured victim are admissible, even if gruesome or unpleasant, so long as a trial court finds their probative value outweighs their prejudicial effect.[6] The report of proceedings reflects that five photographs were admitted: one general background shot showing Pioquinto lying in a bed at Harborview; one showing his left side from the knees up and his left arm; one a close-up of his face; another a close-up of the left side of his face; and still another a very low angle shot of his face. But the photographs at issue have not been included in the record on appeal.[7] Absent a record adequate to permit review of this issue, we have no basis for concluding that the photographs were cumulative.

Because the trial court did not abuse its discretion in

---

[5]*Christensen v. Munsen*, 123 Wn.2d 234, 245-46, 867 P.2d 626, 30 A.L.R.5TH 822 (1994) (the admissibility of cumulative evidence lies within the trial court's discretion).

[6]*State v. Harris*, 106 Wn.2d 784, 791, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987). The trial court refused to admit one of the photographs offered into evidence by the State. This demonstrates that the trial judge was well aware of her discretionary function. *See State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983).

[7]*See Olmsted v. Mulder*, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993) (the burden is on the party aggrieved by a court decision to perfect the record so this court has before it all the evidence necessary to resolve the issue), *review denied*, 123 Wn.2d 1025 (1994).

making the various evidentiary rulings here at issue, there is also no basis for finding that there was cumulative error.

## II. Persistent Offender Accountability Act

 Ames also contends that his sentence imposed under the Persistent Offender Accountability Act violated the prohibition against cruel and unusual punishment in the federal and state constitutions.[8] Ames argues that the sentence imposed under the Act is disproportionate to the crime of which he was convicted. Our Supreme Court has upheld the Act as constitutional in the face of challenges similar to those Ames raises here.[9] To determine whether a sentence is grossly disproportionate to the crime for which it is imposed and thus violates the prohibition against cruel punishment, it is necessary to consider: (1) the nature of the offense; (2) the legislative purpose behind the statute; (3) the punishment the defendant would have received in other jurisdictions; and (4) the punishment imposed for other offenses in the same jurisdiction.[10] As in both *Thorne* and *Rivers*, the crime committed by Ames here is a "most serious offense" under RCW 9.94A.030(23), as were the two crimes of which he was previously convicted, i.e., first degree robbery and second degree robbery.[11] The Supreme Court noted in *Thorne* and *Rivers* that the purposes of the Act include deterring those who would otherwise commit three "most serious offenses" and segregating those who do so from the rest of society.[12] In both those cases, the Court further noted that Washington's persistent offender

---

[8]The Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments;" art. I, § 14 of the Washington Constitution prohibits "cruel punishment." The prohibition in the Washington Constitution affords greater protection than its federal counterpart. *State v. Manussier*, 129 Wn.2d 652, 674, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997).

[9]*Manussier*, 129 Wn.2d at 679; *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996); *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996).

[10]*Thorne*, 129 Wn.2d at 773 (citing *State v. Fain*, 94 Wn.2d 387, 397, 617 P.2d 720 (1980)); *Rivers*, 129 Wn.2d at 713.

[11]*Thorne*, 129 Wn.2d at 773-74; *Rivers*, 129 Wn.2d at 713.

[12]*Thorne*, 129 Wn.2d at 775; *Rivers*, 129 Wn.2d at 713.

statute is similar to state and federal legislation throughout much of the United States.[13] For that reason, it is likely that Ames would have received a similarly harsh sentence in the majority of jurisdictions in this country. The final *Fain* factor requires an analysis of the punishment meted out for other offenses in this jurisdiction. As the Supreme Court explained in both *Thorne* and *Rivers*, all defendants who are convicted of a third "most serious offense" under the Act receive sentences of life imprisonment without the possibility of parole. The offenses which are the basis for the convictions and sentence in this case are serious, violent offenses directly comparable to those in *Thorne* and *Rivers*.[14] Under those cases, there is no basis for concluding that the sentence of life imprisonment without the possibility of parole is grossly disproportionate to the offense Ames committed here.

■■ Ames also argues that his sentence violates the prohibition against cruel and unusual punishment because it was improperly based on his "status" as a persistent offender. As the Supreme Court observed in *Thorne* and *Rivers*, however, it is the defendant's conduct in committing the crime that leads to his conviction and confinement,[15] i.e., it is not his status as a repeat offender that leads to his arrest and confinement.[16] The prior convictions simply aggravate the guilt of the current offense and justify the imposition of a heavier penalty for that crime.[17]

■■ Finally, Ames argues that his sentence violates

[13]*Thorne*, 129 Wn.2d at 775; *Rivers*, 129 Wn.2d at 714.

[14]*Thorne*, 129 Wn.2d at 775-76 (first degree robbery and first degree kidnapping); *Rivers*, 129 Wn.2d at 714 (attempted second degree robbery, second degree robbery and second degree assault).

[15]*Thorne*, 129 Wn.2d at 776 (citing *State v. Lee*, 87 Wn.2d 932, 937, 558 P.2d 236 (1976)); *Rivers*, 129 Wn.2d at 714-15 (also citing *Lee*).

[16]*See also City of Seattle v. Hill*, 72 Wn.2d 786, 794-95, 435 P.2d 692 (1967) (upholding Hill's conviction for unlawful public drunkenness on the ground that it was Hill's conduct in public while drunk that caused his arrest and confinement, not his status as an alcoholic), *cert. denied*, 393 U.S. 872 (1968).

[17]*Thorne*, 129 Wn.2d at 776; *Rivers*, 129 Wn.2d at 714-15.

the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, because it is indeterminate. Under the SRA, the trial court is generally required to decide exactly how many years, months or days a defendant will serve when imposing sentence.[18] But another provision of the Act, RCW 9.94A.120(4), states that a "persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . notwithstanding the maximum sentence under any other law." As the Supreme Court noted in *Thorne*, because the persistent offender provision is part of the SRA, it must be reconciled, if possible, with the other provisions of the Act.[19] There, the defendant argued that his sentence exceeded the trial court's statutory authority because it was greater than the statutory maximum for his crime. The court held that RCW 9.94A.120(4), not the provision limiting SRA sentences to the maximum for the crime, former RCW 9.94A.120(12), governs sentences for persistent offenders.[20] Using the same analysis, we conclude that sentences for persistent offenders under RCW 9.94A.120(4) are also excluded from the requirement that sentences be determinate. Ames's sentence therefore does not violate the SRA.

Ames's sentence of life imprisonment without the possibility of parole is not grossly disproportionate under the circumstances of this case.[21]

Affirmed.

---

[18]RCW 9.94A.030(16).

[19]*Thorne*, 129 Wn.2d at 761.

[20]*Id.*

[21]Both of the issues Ames raised in his pro se brief are without merit. Contrary to his contention that the State failed to include the element of "knowledge" in its "to convict" instruction, that instruction includes the term "recklessly" which encompasses the knowledge element. Both "recklessness" and "knowledge" were separately defined in the court's instructions to the jury. Ames also contends the court's instructions on self defense were inadequate to allow him to argue his theory of the case. But the record reflects that the court gave the jury all of Ames's requested self-defense instructions and defense counsel expressly acknowledged as much. Ames thus cannot prevail on his claim that those instructions were inadequate to allow him to argue his theory of the case.

712

WEBSTER and COX, JJ., concur.

Reconsideration denied March 5, 1998.

Review denied at 136 Wn.2d 1009 (1998).