[Nos. 32426-1-II; 32456-3-II.   Division Two.   January 8, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. NEIL GRENNING, *Appellant*.

520

522

524

*Rita J. Griffith*, for appellant.

*Gerald A. Horne, Prosecuting Attorney,* and *Donna Y. Masumoto, Deputy,* for respondent.

¶1 PENOYAR, J. — Neil Grenning appeals his multiple convictions for various sexual offenses, claiming that (1) the search warrant was not timely executed, (2) the evidence was insufficient to support his possession of commercial child pornography convictions, (3) the discovery protective order was unduly restrictive, (4) his right to an impartial jury was violated, (5) hearsay statements were admitted in violation of his right to confrontation, (6) testimony was improperly admitted, and (7) he is entitled to a new trial due to cumulative error. Grenning further argues that his consecutive sentences (8) violate *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and (9) constitute cruel and unusual punishment.[1] Grenning also raises several additional issues in his statement of additional grounds (SAG).[2] We affirm in part, reverse in part, and remand for further proceedings.

FACTS

I. INITIAL INVESTIGATION AND SEARCH WARRANT

¶2 On March 3, 2002, the Tacoma Police Department received a call from a mother concerned that Grenning had sexually molested her five year old son, RW. She explained that Grenning was her neighbor and that he occasionally took care of RW. The officer suggested that the mother take

---

[1] This case was originally heard on December 1, 2005; it was stayed on May 9, 2006; the stay was lifted on November 30, 2006; additional briefing regarding *State v. Boyd,* 160 Wn.2d 424, 158 P.3d 54 (2007), was requested on June 15, 2007.

[2] RAP 10.10.

RW to a hospital. RW's mother took him to Mary Bridge Children's Hospital, where a doctor examined him. During the examination, RW told the doctor that "Neil" had touched him on his "pee pee." 6 Report of Proceedings (RP) at 845.

¶3 On March 5, 2002, two days after RW's mother called the police, Detective Baker obtained a search warrant for Grenning's residence. In the affidavit in support of the warrant, Detective Baker indicated that RW's mother found RW in the bathroom, placing an object in his anus. RW told his mother he was "trying to get out what Neil had put into my butt." Clerk's Papers (CP) at 49. Detective Baker stated that RW handed his mother a jar of petroleum jelly and said, "[t]his is what Neil put on his pee pee and put in my butt." CP at 49. RW's mother also told Detective Baker that Grenning had once showed her a digital picture he took of RW and that RW told her Grenning had taken pictures of him unclothed.

¶4 Detective Baker explained in his affidavit that Grenning told the officers during an interview that he kept personal lubricant near his computer because "it was more enjoyable to do that while sitting at the computer." CP at 50. Grenning's computer was located in his bedroom. When the officers asked Grenning if he had pornographic materials on his personal computer, he stated that it was an older computer and that there may be some "old stuff" on it. RP at 401.

¶5 The search warrant granted the officers permission to search for and seize a variety of items concealed at Grenning's home that were material to the investigation or prosecution of first degree child molestation. It required detectives to enter and search the home within 10 days.

¶6 On March 6, officers entered Grenning's home. Detective Voce, who was assigned to handle all computer equipment during the search, lawfully seized Grenning's computer and hard drives. On March 15, Detective Voce copied Grenning's three hard drives and then began investigating and reviewing the copied hard drives. He recovered two

images of what appeared to be commercial child pornography. At this point, he stopped his investigation to obtain another search warrant.

## II. SECOND WARRANT AND SUBSEQUENT INVESTIGATION

¶7 On March 27, police detectives obtained a second search warrant, expanding the search to include photographs, photograph albums, and drawings depicting minors engaged in sexually explicit activity. The warrant required that the search be done within 60 days.

¶8 More than a year later, on April 3, 2003, Detective Voce continued reviewing the information on the copied hard drives, specifically looking for evidence of child molestation and child pornography. He ultimately uncovered approximately 35,000 to 40,000 photographs of minors engaged in sexually explicit conduct on Grenning's hard drives. He uncovered 300 images depicting RW being sexually assaulted and molested; 40 images of a second victim, BH, being sexually assaulted and molested; and 20 images of commercial child pornography. The commercial child pornography images depicted adult males sexually assaulting or molesting minors.

¶9 According to Detective Voce, the images were located in the "unallocated space" of two of the three hard drives seized from Grenning's house. RP at 640. Grenning's computer was a Macintosh brand computer with an Apple operating system. Macintosh hard drives contain seven different partitions (or sections) of the drive. Two of Grenning's hard drives only contained four of the seven usual partitions, and it appeared to Detective Voce that they had been intentionally removed. Detective Voce explained that removing partitions would cause data to be listed as unallocated even if the user had not deleted it. Additionally, the removed partitions made it more difficult to access the images and data on the hard drives. Detective Voce found all of the child pornography pictures on the two hard drives with unallocated space.

### III. CONTINUING INVESTIGATION

¶10 In April 2003, the Criminal Misconduct Office in Brisbane, Australia, contacted Detective Baker. Australian police suspected that pornographic photographs they discovered in a computer in Australia were Grenning's photos. The photos depicted victim BH being sexually assaulted and molested. Detective Voce obtained another search warrant using the information obtained from the Australian police to specifically look for evidence relating to BH on Grenning's copied hard drives.

¶11 Detectives found photos of BH on Grenning's hard drives and instant message chats. Chat participant "Photokind" referred to himself as a recent graduate of Pacific Lutheran University who was looking for work and applying for a teaching license. RP at 669-70. This description matched Grenning. In one chat, Photokind described a camping trip that matched up with the images found on Grenning's computer of BH being sexually assaulted. The chat gave a play-by-play narrative of the camping trip and detailed each of the pictures very specifically.

¶12 On June 7, 2004, prosecutors charged Grenning with 17 counts of first degree child rape, 2 counts of attempted first degree child rape, 6 counts of first degree child molestation, 26 counts of sexual exploitation of a minor, 1 count of second degree child assault, and 20 counts of possession of depictions of a minor engaged in sexually explicit conduct. As an aggravating factor, the State alleged that Grenning committed the second degree child assault and possession of child pornography crimes with sexual motivation.

### IV. PRETRIAL MOTION

¶13 Grenning made a pretrial motion to suppress the evidence the police obtained from the copies of his hard drives, arguing that the search was untimely. The trial court denied the motion. Grenning also made a pretrial motion for mirror-image copies of his computer hard drives.

The trial court granted Grenning's motion, but it crafted a protective order requiring that the mirror-image hard drive copies be viewed and tested only at the Tacoma police facility, because it was a secured location. It directed police detectives to provide a computer, monitor, keyboard, mouse, and operating system for Grenning.

¶14 Grenning was allowed to access the hard drives between 8:30 AM and 4:30 PM Monday through Friday. The drives were to remain in the secured location. Only the defendant, his counsel, and his computer expert could view the data on the imaged drives. Once Grenning completed his examination, he had to notify Detective Voce, who would then remove the imaged drives and store them until completion of the case. While the drives were being stored, Detective Voce was not to view any of the data contained on the imaged drives or investigate what type of forensic evaluation Grenning conducted on the drives or the computer.

¶15 Grenning asked the trial court to reconsider the protective order and to allow him to remove the copied hard drives from the secure location so his expert could use his own lab to analyze the hard drives. The trial court denied the motion, determining that the protective order was necessary to protect the victims and to ensure that material contained on the hard drives was not released on the Internet.

V. TRIAL TESTIMONY, CONVICTION, AND SENTENCING

¶16 At trial, BH was nine years old. At the time of the events, BH was approximately six years old. BH testified that he went on a camping trip with his older brother and Grenning. BH slept in the same tent as Grenning, and BH testified that Grenning touched his penis with his mouth. BH was nervous testifying and had difficulty talking about the camping trip.

¶17 RW was seven years old at the time of trial. The trial court found RW unavailable to testify due to his age.

¶18 On June 18, 2004, a jury convicted Grenning of 16 counts of first degree child rape,[3] 26 counts of sexual exploitation of a minor,[4] 6 counts of first degree child molestation,[5] 1 count of second degree assault of a child with sexual motivation,[6] 20 counts of possession of depictions of minors engaged in sexually explicit conduct with sexual motivation,[7] and 2 counts of first degree attempted child rape.[8]

¶19 At sentencing, the trial court imposed the high end standard range for each offense, ran the sentences for the convictions within each type of offense concurrently, and then ran each class of offenses consecutively. This resulted in a total sentence of 1,404 months (117 years). Grenning appeals.

## ANALYSIS

### I. MOTION TO SUPPRESS THE PHOTOS

¶20 Grenning first argues that the trial court erred in admitting evidence the police found during their search of his computer hard drives because (1) the police search was not completed within 10 days of the warrant's issuance and (2) the search warrant was overbroad and lacked probable cause. He argues that the trial court should have granted his motion to suppress evidence.

¶21 The Fourth Amendment grants citizens the right to protection against unreasonable searches and seizures and is applied to the states through the due process clause of the Fourteenth Amendment. U.S. CONST. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed.

---

[3] In violation of RCW 9A.44.073.

[4] In violation of RCW 9.68A.040(1)(b).

[5] In violation of RCW 9A.44.083.

[6] In violation of RCW 9A.36.130.

[7] In violation of RCW 9.68A.070.

[8] In violation of RCW 9A.44.073 and RCW 9A.28.020.

2d 1081 (1961). Generally, a search is reasonable if it is executed with a lawfully issued warrant and based on probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The Washington Constitution provides greater protection to individual privacy interests than the Fourth Amendment. *City of Seattle v. Mesiani*, 110 Wn.2d 454, 456, 755 P.2d 775 (1988).

■ ■ ¶22 When reviewing the denial of a motion to suppress, we determine whether substantial evidence supports the findings of fact and then whether the findings of fact support the conclusions of law. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999); *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review conclusions of law de novo. *Mendez*, 137 Wn.2d at 214.

A. Untimely Execution of the Search Warrant

¶23 Grenning argues that the search of his computer hard drives was untimely under CrR 2.3(c)[9] because Detective Voce found two child pornography photographs more than 10 days after the March 5, 2002 warrant was issued. Grenning argues that because the warrant required that the search be executed within 10 days, any investigation of his computer after the 10 days was warrantless and in violation of his Fourth Amendment rights.

¶24 Grenning further argues that there was no probable cause to issue the warrant on March 27, 2002 because discovery of the first two photographs that were the basis for probable cause was untimely. Thus, he contends that all evidence seized under both the March 5 and March 27, 2002 search warrants should be suppressed.

■ ¶25 This is an issue of first impression in Washington. There are no Washington cases dealing directly with the constitutionality of an ongoing forensic examination of information stored on copies of a hard drive that extends

[9] "A search warrant . . . shall command the officer to search, within a specified period of time *not to exceed 10 days*, the person, place, or thing named . . . ." CrR 2.3(c) (emphasis added).

beyond the 10-day deadline specified in CrR 2.3(c). However, it is generally understood that a lawful seizure of apparent evidence of a crime using a valid search warrant includes a right to test or examine the seized materials to ascertain their evidentiary value. 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.10(e), at 771 (4th ed. 2004).

¶26 On March 5, the police obtained a search warrant to search Grenning's residence. The express terms of the warrant authorized police to search Grenning's residence for evidence relating to the investigation of first degree child molestation, specifically including photography equipment, computer hardware, computer software, and electronic communications. On March 6, the police entered Grenning's residence, searched the premises, and seized his computer and hard drives. Because the police entered and searched Grenning's residence within the 10-day warrant requirement, the search was timely and the seizure of his hard drives lawful. That investigators continued testing the hard drives in search of evidence after they were lawfully seized does not implicate the Fourth Amendment. However, even if the Fourth Amendment was implicated, it was not violated.

¶27 A search is constitutionally timely so long as it begins before the expiration of a warrant and as long as probable cause continues through completion of the search. *State v. Kern*, 81 Wn. App. 308, 312, 914 P.2d 114 (1996). Here, Detective Voce searched information stored on imaged copies of Grenning's hard drives. Hard drives store permanent, static, and unchanging data. Due to the nature of the material seized, the passage of time did not affect probable cause.

¶28 The Fourth Amendment does not provide for a specific time limit in which a computer may undergo forensic examination after it has been seized with a valid search warrant. *United States v. Hernandez*, 183 F. Supp. 2d 468, 480 (D.P.R. 2002). If the delay is reasonable, it does not violate the Fourth Amendment. *See Hernandez*, 183 F. Supp. 2d at 480-81. Because computer searches usually

occur at a different location than where the computer was seized, involve more preparation than an ordinary search, involve a greater degree of care in the execution of the warrant, and contain more information than ordinary searches, delays are expected and reasonable. *Hernandez,* 183 F. Supp. 2d at 480-81; *see also United States v. Syphers,* 426 F.3d 461 (1st Cir. 2005). In *Syphers,* a five-month delay in execution of a warrant did not invalidate the search of the defendant's computer since there was no showing that (1) the delay caused a lapse in probable cause, (2) it created unfair prejudice to the defendant, or (3) officers acted in bad faith. *Syphers,* 426 F.3d at 469. This test instructs our analysis here.

¶29 Detective Voce had to search Grenning's three hard drives. He had to consult with another expert to obtain specialized software in order to complete his search. The information on the hard drives was not transitory, changeable, or stale when Detective Voce reviewed the copies of the hard drives. There was a significant amount of information on the hard drives, and the trial court found that it was not realistic or reasonable for Detective Voce to review it all in 10 days. Probable cause continued to exist throughout Detective Voce's search. The police did not act in bad faith in executing the warrant. The delay was reasonable and Grenning cannot demonstrate prejudice. We hold that the trial court did not err in admitting evidence obtained under the search warrants.

B. Probable Cause and the Particularity Requirement of the Search Warrant

¶30 Grenning next argues that the warrants lacked probable cause and were overbroad because Detective Baker's affidavit cites to only noncriminal behavior together with general statements about pedophiles' habits. The State responds that the warrant was properly issued and complied with Fourth Amendment requirements.

¶31 We review a challenge to a search warrant for an abuse of discretion. *State v. Cole,* 128 Wn.2d 262, 286,

906 P.2d 925 (1995). The Fourth Amendment requires that an affidavit supporting a warrant must establish probable cause. *State v. Nordlund*, 113 Wn. App. 171, 179, 53 P.3d 520 (2002). The affidavit must contain facts and circumstances that are sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999); *Cole*, 128 Wn.2d at 286. There must also be a nexus between the criminal activity and the place to be searched. *Thein*, 138 Wn.2d at 140.

¶32 Affidavits of probable cause need not meet the standards governing the admissibility of evidence at trial. *State v. Withers*, 8 Wn. App. 123, 125, 504 P.2d 1151 (1972). We give great deference to the trial court's probable cause determination. *State v. Cord*, 103 Wn.2d 361, 366, 693 P.2d 81 (1985).

¶33 Relying on *State v. Smith*, 60 Wn. App. 592, 602-03, 805 P.2d 256 (1991), Grenning argues that general information about pedophilia in a search warrant does not establish probable cause when it is not demonstrated that the defendant is a pedophile. However, in *Smith*, all the facts in the affidavit were 10 years old and the pedophile profile was the only basis for probable cause. *Smith*, 60 Wn. App. at 594-600.

¶34 Here, unlike in *Smith*, Baker's affidavit specifies facts about Grenning's molestation of RW. Thus, the issuing court did not rely solely on the profile of a typical pedophile to establish probable cause for searching Grenning's computer.

¶35 Relying on *Nordlund*, Grenning argues that greater particularity was required for probable cause to search his computer. In *Nordlund*, the court held that there must be a greater degree of particularity in the search warrant for a defendant's personal computer. *Nordlund*, 113 Wn. App. at 182.

¶36 However, in *Nordlund*, the affidavits did not recite particularized information linking the computer to possible

evidence of crimes and established only the defendant's noncriminal use of the computer. *Nordlund*, 113 Wn. App. at 182. The State seized the defendant's computer to search for evidence of his whereabouts on the day he allegedly attacked two young women, not to look for pornography or evidence of child molestation supported by other evidence in the affidavit. *Nordlund*, 113 Wn. App. at 183.

¶37 Here, Baker's affidavit established a reasonable inference that Grenning sexually molested RW, that he masturbated in front of his computer, and that there were sexually explicit photographs on Grenning's computer supporting a child molestation charge. We affirm the trial court's finding that probable cause existed to authorize the search of Grenning's computer and that the search was sufficiently particularized.

II. PROTECTIVE ORDER

¶38 Grenning next contends that the trial court's protective order regarding the hard drives was an undue restriction on his access to discovery and denied him his state and federal rights to due process, effective assistance of counsel, compulsory process, and to maintain confidentiality. He contends that the trial court's concern about the sensitive nature of the images and the unauthorized release of the images was unreasonable and that the order effectively precluded him from having an expert properly examine the hard drives and computer.

A. Possession of Commercial Child Pornography Convictions

¶39 The trial court did not have the benefit of the recent case of *State v. Boyd*, where the Washington Supreme Court held that a defendant is entitled to mirror-image copies of hard drives where the evidence on the computer supports charges of commercial child pornography possession. *State v. Boyd*, 160 Wn.2d 424, 436, 158 P.3d 54 (2007). The analysis of the hard drives "requires greater access than can be afforded in the State's facility." *Boyd*, 160 Wn.2d at 436. In

child pornography possession cases, defense counsel is entitled to the hard drive copies, subject to a protective order, "where the forensic expert intends to use particular diagnostic equipment from his lab and must review tens of thousands of images from potentially disparate sources." *Boyd,* 160 Wn.2d at 437.

¶40 The Washington Supreme Court suggests safeguards to protect a victim's interests. As part of the protective order, the trial court should (1) ensure that the evidence is secured and inaccessible to anyone besides defense counsel, (2) limit access by noncounsel without court order, (3) permit access only for purposes of the action, (4) ensure no additional copies are made, (5) require a copy of the protective order be kept with the evidence, (6) prohibit digitizing of the evidence, (7) order installation of a firewall between the Internet and any computer used to access the protected materials during inspection, (8) require counsel to return the evidence if representation is terminated, (9) require any computer used in the evidence's examination to be cleared before it is accessed for other purposes, (10) order prompt return of the evidence at the end of the criminal proceeding, and (11) require that law enforcement verify the data's destruction and confirm that destruction to the court. *Boyd,* 160 Wn.2d at 438-39.

¶41 Here, the trial court granted Grenning's motion for mirror-image hard drive copies. However, the trial court did not allow Grenning's attorney or computer expert to view or test the hard drive copies outside of the Tacoma police facility. Because expert analysis of the hard drives "requires greater access than can be afforded in the State's facility," the trial court's protection order was unduly restrictive for the commercial child pornography charges. *Boyd,* 160 Wn.2d at 436. Thus, we reverse Grenning's convictions for 20 counts of possession of depictions of minors engaged in sexually explicit conduct and remand for proceedings consistent with this opinion.

B. Sufficiency of Evidence of Possession of Commercial Child Pornography

¶42 Grenning argues that the evidence was insufficient to convict him under RCW 9.68A.070 because the State did not prove that he actually possessed the child pornography. He claims that though the pornography was found on his computer, there is no evidence to indicate he knew the images were there and that his possession conviction should be reversed. We reject this claim.

■■ ¶43 Generally, we "defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997); *see also State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The applicable standard of review here is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993). The State presented evidence to the jury that the computer at issue was located in Grenning's bedroom and that other roommates did not likely know of the images. This computer stored a large number of pornographic images that Grenning personally took of RW and BH, as well as a large number of commercial child pornography photographs. Upon questioning by police as to the pornography on the computer, Grenning admitted that there may be some "old stuff" on it. RP at 401. Grenning also told police that he kept a bottle of lubricant next to the computer for personal use while he was at the computer.

■ ¶44 These facts presented to the jury are not in dispute, and taken in the light most favorable to the State, they provide sufficient evidence that a reasonable trier of fact could find beyond a reasonable doubt that Grenning knew of the child pornography on his personal computer. Because double jeopardy is not implicated, these charges may be retried on remand. *State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998).

## C. Child Rape, Attempted Child Rape, Child Molestation, Sexual Exploitation of a Minor, and Assault of a Child Convictions

¶45 The scope of discovery is within the trial court's discretion, and we do not disturb its decisions absent a manifest abuse of discretion. *State v. Brown*, 132 Wn.2d 529, 626, 940 P.2d 546 (1997). The trial court's protective order was not unduly restrictive for the first degree child rape, attempted first degree child rape, first degree child molestation, sexual exploitation of a minor, or second degree assault of a child charges. Grenning was given access to mirror-image copies of his hard drives. Grenning's expert stated that "the need to store or retain additional copies of any of the image files that the State so ardently seeks to protect is not anticipated." RP at 602. Grenning does not argue he did not have copies or access to the hard drive copies; rather, he challenges the protective order restriction that the hard drives could not be removed from the Tacoma police station.

¶46 In *Boyd,* the court reasoned that defendants should have access outside of a State facility to mirror-image copies of the defendant's computer hard drive in child pornography cases because forensic analysis "might show that someone other than the defendant caused certain images to be downloaded. It may indicate when the images were downloaded. It may reveal how often and how recently images were viewed and other useful information based on where the images are stored on the device." *Boyd*, 160 Wn.2d at 436. The *Boyd* court reasoned that defense experts could not conduct such detailed examinations of a hard drive in the State facility.

¶47 In Grenning's first degree child rape, attempted first degree child rape, first degree child molestation, sexual exploitation of a minor, and second degree assault of a child charges, the discovery provided was adequate. For these charges, the factors the *Boyd* court considered are not at issue. It is irrelevant (1) "how the evidence made its way

onto the computer," (2) who caused the "images to be downloaded," (3) "when the images were downloaded," (4) "how recently [the] images were viewed," and (5) "where the images are stored on the device." *Boyd*, 160 Wn.2d at 436.

¶48 In the child rape, molestation, exploitation, and assault charges, it does not matter if Grenning purposefully possessed, downloaded, or viewed the pictures. The pictures were entered into evidence because they depict Grenning raping and molesting RW and BH. The issue was whether Grenning committed these acts. The three cases consolidated for *Boyd* involved commercial child pornography. *Boyd*, 160 Wn.2d at 429-31. They did not involve child pornography that depicted the *defendants* engaging in sexual acts with minors. *Boyd*, 160 Wn.2d at 429-31. Additionally, *Boyd* did not address charges beyond child pornography possession. *Boyd*, 160 Wn.2d at 429-31. Because the factors the *Boyd* court considered are not at issue here, we decline to extend *Boyd*'s holding to charges other than child pornography possession.

¶49 Additionally, even if the trial court committed error in ruling on discovery, Grenning must demonstrate that the error was prejudicial and that it materially affected the trial outcome. *State v. Linden*, 89 Wn. App. 184, 190, 947 P.2d 1284 (1997). Grenning's computer expert had access to mirror-image hard drive copies. He was able to perform tests on the hard drives. The pictures were entered as evidence of the acts that Grenning committed. In some of the pictures, Grenning's face is visible. They depict Grenning raping and molesting RW and BH. Both BH's mother and older brother testified at trial. They positively identified the child in some of the photographs as BH.

¶50 Considering (1) that Grenning had a computer expert that could perform tests on the hard drives; (2) that he did not request further duplication of the pictures; (3) the testimony of BH, his mother, and brother; and (4) the nature of what the pictures depict, access to the hard drives in a location other than the secured room in the police station would not have materially affected the trial out-

come. Thus, we affirm Grenning's convictions for child rape, attempted child rape, child molestation, sexual exploitation of a minor, and assault of a child.

III. IMPARTIAL JURY

¶51 On the first day of trial, the *Tacoma News Tribune* ran a story about Grenning's case. Grenning argues that juror 31 should have been dismissed because the juror indicated she saw the headline, recognized it might apply to this case, and then did not read the body of the article. The State responds that the trial court did not abuse its discretion in keeping juror 31 on the panel as there was no evidence that the juror was actually biased against Grenning.

¶52 We review a trial court's denial of a challenge for cause for manifest abuse of discretion. *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.2d 190 (1991). A criminal defendant has a constitutional right to a jury trial. *State v. Stackhouse*, 90 Wn. App. 344, 350, 957 P.2d 218 (1998). This implies the right to an impartial jury. *Stackhouse*, 90 Wn. App. at 350. The trial court must excuse a juror for cause if actual bias is shown. *State v. Gosser*, 33 Wn. App. 428, 433, 656 P.2d 514 (1982); RCW 4.44.170.

¶53 A defendant must prove actual bias. *Noltie*, 116 Wn.2d at 838. A defendant must show " 'more than a mere possibility that the juror was prejudiced' " to successfully challenge the trial court's decision on appeal. *Noltie*, 116 Wn.2d at 840 (emphasis omitted) (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE § 202, at 331 (4th ed. 1986)); *Stackhouse*, 90 Wn. App. at 350. A juror's "equivocal answers alone" do not justify removal for cause. *Noltie*, 116 Wn.2d at 839. The appropriate question is "whether a juror with preconceived ideas can set them aside" and decide the case on an impartial basis. *Noltie*, 116 Wn.2d at 839. The trial court is in the best position to address this question because it has the ability to evaluate factors outside the written record such as a juror's demeanor and conduct. *Noltie*, 116 Wn.2d at 839.

¶54 In this case, juror 31 did not read the article in question, only the headline, which did not mention Grenning. The trial court questioned juror 31 and found that the first page of the article contained no prejudice to Grenning. Furthermore, voir dire was not transcribed or recorded for our review. There was no manifest abuse of discretion in finding a lack of prejudice, given that the juror read only the headline and not the article. We find no error in allowing juror 31 to remain.

IV. CONFRONTATION CLAUSE

¶55 Grenning next challenges the admission of RW's hearsay testimony from Dr. Duralde and the police detectives. He contends that admission of RW's out-of-court hearsay statements violated his right of confrontation under the United States Constitution.

¶56 Under the Sixth Amendment, a defendant has the right to confront witnesses and to meaningful cross-examination. The Sixth Amendment was incorporated and made applicable to the states through the due process clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 401, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

¶57 In *Crawford*, the Supreme Court held that the confrontation clause bars the admission of testimonial hearsay statements made by a nontestifying witness unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In *Crawford,* the Supreme Court held that the confrontation clause prohibits testimonial hearsay without regard to whether a firmly rooted hearsay exception applies. *State v. Moses*, 129 Wn. App. 718, 724, 119 P.3d 906 (2005). Under *Crawford*, statements made during police interrogation are testimonial. *Moses,* 129 Wn. App. at 725.

¶58 Here, the trial court admitted Dr. Duralde's testimony under ER 803(a)(4) as a statement made for the purposes of medical diagnosis or testing. Grenning argues

that it violates *Crawford* because statements to a doctor are testimonial when police are involved. The trial court also allowed hearsay testimony from three police officers about what RW's mother told them.

¶59 It is well established that constitutional errors, including violations of a defendant's rights under the confrontation clause, may be so insignificant as to be harmless. *Harrington v. California*, 395 U.S. 250, 251-52, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 21-22, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh'g denied*, 386 U.S. 987 (1967). A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. Any violation of *Crawford* in this case is harmless, given the overwhelming physical evidence showing Grenning's assaults on RW.

¶60 Even absent RW's statements to his mother and doctor, the untainted evidence of Grenning's guilt was overwhelming. Each count was supported by graphic photographs found on Grenning's personal computer. Grenning took the photographs while committing the crimes against RW and BH. The pictures depict Grenning raping and molesting the children. Grenning's, BH's, and RW's faces are visible in many of the photographs that depict child rape and molestation. The record is replete with evidence supporting Grenning's convictions. In addition to the photographs, there was an audio recording and physical evidence seized from Grenning's residence that support the convictions. We have no reasonable doubt that even absent the hearsay, the jury viewing the photographs, viewing the items seized from Grenning's residence, hearing BH's testimony, and listening to the audio recording would have found Grenning guilty beyond a reasonable doubt. We hold that any violation of *Crawford* was harmless.

V. Opinion Testimony

¶61 Grenning argues that the trial court admitted opinion testimony in violation of his constitutional right to a

jury trial. Grenning challenges Detective Baker's testimony that the child in the photographs was RW, that the perpetrator was Grenning, and that the photographs were taken in Grenning's bedroom. He also challenges Detective Voce's testimony that a majority of the images on Grenning's computer depicted minors engaged in sexually explicit conduct and that "Photokind" referred to Grenning. Additionally, Grenning challenges Dr. Duralde's testimony that the victims depicted in exhibits 94 through 114 were children under the age of 18. Finally, Grenning challenges Customs Agent Darryl Cosme's testimony that the commercial pornographic photographs were of actual children and not computer generated.

¶62 Grenning argues that the above testimony was inadmissible under ER 702 and it was merely the witnesses' personal resolution of factual issues. He further argues that it was for the jurors to decide whether the images satisfied the elements of the crimes and that the above testimony left nothing for the jurors to decide.

¶63 The State counters that even if we were to find that constitutional error occurred, any such error was harmless beyond a reasonable doubt. We agree. Even absent the above testimony, the photographic evidence supporting Grenning's convictions is overwhelming and any error was harmless.

VI. CUMULATIVE ERROR

¶64 Grenning argues that cumulative error denied him a fair trial. The cumulative error doctrine applies when several errors occurred at the trial court level but none alone warrants reversal. *State v. Hodges,* 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003).

¶65 We hold that the cumulative error doctrine does not apply here. Even if any of the asserted errors occurred, the photographic evidence in this case is undisputed and overwhelming. No prejudice could have resulted, and we decline to grant Grenning a new trial on this basis.

## VII. *Blakely* and Former RCW 9.94A.589(1)(a) (2002)

¶66 Grenning next maintains that his consecutive sentences, imposed under former RCW 9.94A.589(1)(a), violate *Blakely*, 542 U.S. 296, and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The trial court ruled that the sentences for each type of crime would be served concurrently. It then imposed sentence for each different class of crimes consecutive to each other. For example, all the child rape counts involving RW were to be served concurrently to each other but consecutively to each of the other classes of crimes, such as the molestation convictions.

¶67 We review constitutional challenges to a trial court's sentencing decision de novo. *State v. Cubias*, 155 Wn.2d 549, 552, 120 P.3d 929 (2005). Under former RCW 9.94A.589(1)(a), felonies that are not serious, violent offenses are served concurrently. Consecutive sentences for violent offenses that are not serious may be imposed only "under the exceptional sentence provisions of RCW 9.94A-.535." RCW 9.94A.589(1)(a). The Washington Legislature has not categorized first degree child rape as a serious violent offense. *See* RCW 9.94A.030(41). In *VanDelft*, our Supreme Court held that *Blakely* applies to consecutive sentencing decisions under RCW 9.94A.589(1)(a). *In re Pers. Restraint of VanDelft*, 158 Wn.2d 731, 743, 147 P.3d 573 (2006). Thus, judicial fact-finding that imposes consecutive sentences under RCW 9.94A.589(1)(a) is impermissible. *VanDelft*, 158 Wn.2d at 743.

¶68 However, *VanDelft* does not discuss RCW 9.94A.712. The trial court sentenced Grenning under RCW 9.94A.712.[10] When a person who is not a persistent offender is sentenced for specified sex-related crimes, including first degree child rape, RCW 9.94A.712 applies. RCW 9.94A-.712(1); *see State v. Woodruff*, 137 Wn. App. 127, 131, 151

---

[10] We apply former RCW 9.94A.712 (2004), which was the applicable version at the time of Grenning's sentencing.

P.3d 1086 (2007). Under RCW 9.94A.712, judicial fact-finding is permissible for the imposition of exceptional sentences. *State v. Clarke*, 156 Wn.2d 880, 892, 134 P.3d 188 (2006) (*Blakely* does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the statutory maximum sentence imposed); *Woodruff*, 137 Wn. App. at 133. Because Grenning was sentenced under RCW 9.94A.712(3), allowing judicial fact-finding, "the trial court may rely on the factors in RCW 9.94A.535(2) to impose an exceptional sentence." *Woodruff*, 137 Wn. App. at 135.

¶69 The trial court made factual findings under RCW 9.94A.535(2) to support imposing the sentences consecutively. Additionally, the jury returned a special verdict finding that Grenning committed the second degree assault of a child with sexual motivation. A finding of sexual motivation for the offense is an aggravating factor that allows the court to impose an exceptional sentence. RCW 9.94A.535(3)(f). Thus, the consecutive sentences the trial court imposed were proper.

VIII. CRUEL AND UNUSUAL PUNISHMENT

¶70 Grenning argues that his sentence constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington Constitution. However, given the nature of the crimes Grenning committed, we hold that his sentence does not constitute cruel and unusual punishment.

¶71 Punishment is "cruel and unusual" if it "is of such disproportionate character to the offense as to shock the general conscience and violate principles of fundamental fairness." *State v. LaRoque*, 16 Wn. App. 808, 810, 560 P.2d 1149 (1977). Whether a sentence is grossly disproportionate to the crime for which it is imposed and violates the state and federal constitutional prohibitions against cruel punishment depends on the (1) nature of the offense, (2) legislative purpose behind the statute, (3) punishment the defendant would have received in other jurisdictions, and

(4) punishment imposed for other offenses in the same jurisdiction. *State v. Ames*, 89 Wn. App. 702, 709, 950 P.2d 514 (1998). These are only factors to consider, and no one factor is dispositive. *State v. Gimarelli*, 105 Wn. App. 370, 380-81, 20 P.3d 430 (2001).

¶72 Grenning committed crimes against two young children, RW and BH, both under the age of six at the time of the crimes. Grenning took and saved graphic photographs of the acts. Grenning's sentence does not shock the general conscience, given the severity and gruesome nature of the crimes committed. Given the gravity of Grenning's offenses, we do not feel it necessary to discuss the three remaining factors. Grenning's sentence is entirely reasonable.

IX. STATEMENT OF ADDITIONAL GROUNDS

¶73 Finally, Grenning filed a SAG, in which he raises numerous arguments.[11] We have carefully reviewed all of Grenning's additional grounds and find no merit in any of them.

¶74 We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

Review denied at 164 Wn.2d 1026 (2008).

---

[11] These arguments include (1) the trial court's failure to suppress statements made by Grenning; (2) the State's failure to bring Grenning to trial within speedy trial time; (3) the State's failure to produce evidence in a timely manner; (4) that Detective Voce's investigation was "poorly executed, scarcely documented, and wrought with assumption and error"; (5) that the State committed misconduct in the presentation of the evidence and the "unit of prosecution"; (6) that Grenning's right to a fair trial was violated by extrajudicial comments made by the State to a "saturated media environment"; (7) the imposition of unreasonable and excessive bail; (8) that cumulative error denied Grenning a fair trial; and (9) that Grenning's Fourth Amendment rights were violated by the trial court for failing to rule on his motion to return property. SAG at i-ii.