IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79508-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) | FOR RECONSIDERATION, |
| RONALD JOHN BRENNAN, JR., | ) | WITHDRAWING OPINION, |
| | ) | SUBSTITUTING OPINION |
| Appellant. | ) | |
| | ) | |

The appellant, Ronald J. Brennan, Jr., filed a motion for reconsideration for the opinion filed on June 15, 2020. A majority of the panel having determined that the motion should be granted and that the opinion filed on June 15, 2020 shall be withdrawn and a substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration be, and the same is, hereby granted. It is further

ORDERED that the opinion filed on June 15, 2020 is withdrawn and a substitute unpublished opinion shall be filed.

FOR THE COURT:

_____
Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79508-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RONALD JOHN BRENNAN, JR., | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Ronald J. Brennan, Jr. was acquitted of one count of rape in the third degree and one count of rape in the second degree, but was convicted of two counts of distributing a controlled substance to a person under the age of eighteen, each with a sexual motivation enhancement. Though he did not object at trial, he now argues that the prosecutor deprived him of his right to a fair trial by making statements during opening and closing argument that constituted misconduct. While we find some of the challenged statements prejudicial and likely to affect the jury's verdict, Brennan fails to demonstrate that this prejudice could not have been cured by an instruction from the judge and, as such, his claim fails. Brennan also raises a number of issues in a pro se statement of additional grounds, each of which is analyzed separately below, but they are individually and collectively unsuccessful. We affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Ronald Brennan was charged with one count of rape in the third degree, one count of rape in the second degree, and two counts of distribution of a controlled substance to a person under the age of eighteen with a sexual motivation. The State alleged Brennan had sexual intercourse with a 16-year-old male, A.H., against his will, and with R.F., a 17-year-old male, when he was incapable of consent by being physically or mentally incapacitated. The distribution charges were based on allegations that Brennan twice provided heroin to R.F. for the purpose of his own sexual gratification. Brennan entered not guilty pleas to all four of the charges and proceeded to a jury trial where both A.H. and R.F. testified.

The evidence at trial established Brennan was a methamphetamine user who lived in his car and gave people rides and did other odd jobs to support his drug use. R.F. was 17 years old when he first encountered Brennan and had been using heroin since he was nine. R.F. met Brennan when his mother arranged for Brennan to pick him up and drive him to his aunt's house. During the car ride, Brennan and R.F. discussed Brennan's cell phone background image which depicted two men engaged in a sexual act. R.F. briefly stayed at his aunt's home, but eventually stole items from her home and boarded a bus. He intended to sell or trade the items for heroin and go live with Brennan in his car. While on the bus, R.F. saw a friend who introduced him to A.H. The group talked and A.H. ultimately agreed to join R.F and stay with Brennan.

Brennan testified he used methamphetamine, not heroin, and that during his time with R.F., R.F. used heroin and obtained it without Brennan's assistance. Brennan further testified that he and R.F. were in a romantic relationship, they lived together in the car, both did drugs, and had consensual sex on a regular basis. R.F.'s testimony was that he primarily used heroin and Brennan used methamphetamine, and the two regularly used drugs together. Contrary to Brennan's testimony, R.F. asserted that he was using Brennan to obtain drugs and that, at times, Brennan gave him drugs directly. R.F. also described one instance when he awoke after using heroin to find Brennan having sex with him. R.F. indicated he pushed Brennan off, but never reported the incident to the police and continued living with Brennan. This was the basis for the rape in the second degree charge.

At trial, A.H. stated that Brennan and R.F. seemed to be in a relationship and then recounted an incident when the two had consensual sex in the back seat of Brennan's car while A.H. was in the front seat. He claimed that R.F. and Brennan invited A.H. to join them, but he declined. A.H. indicated he observed Brennan conduct drug transactions with various people and that Brennan paid cash, as opposed to doing odd jobs, for the drugs. A.H. testified he never saw R.F. buy drugs with cash.

The group later ended up at an abandoned house together with a fourth person, Douglas Sanders. A.H. testified that while at the house, Brennan anally penetrated him despite his protest. This was the basis for the rape in the third degree charge. A.H. also said Brennan told him to put R.F.'s testicles in his mouth

and although he didn't want to, he did as requested. R.F. and Brennan offered a different version of these events. They stated that after R.F. injected heroin at the house, he told Brennan he wanted to perform oral sex on A.H. Brennan left the room to discuss the topic with A.H. and after they returned, R.F. performed oral sex on Brennan and A.H. They claimed A.H. became embarrassed after the sex act with R.F. and left the room to contact his girlfriend on the phone.

Sanders testified that he was present in the house, that Brennan showed up with methamphetamine and opiates, and that the group used the drugs together. Sanders indicated he was "pretty high" and "fairly out of it." He recalled focusing on his drawing. He saw Brennan and the other two leave the room but did not witness any sexual acts.

R.F. admitted on the stand that he made false statements to law enforcement during the investigation of the case. R.F. initially told them that Brennan had repeatedly raped him and that their sex was never consensual, but he later admitted that was not true. R.F. stated his motive for lying was his fear that he was under investigation for raping A.H. and his desire to have law enforcement to focus on Brennan.

During opening statements, the prosecutor laid out the State's theory of the case and stated:

> Ronald Brennan is a sexual predator who preys on vulnerable teenage boys who are drug users, homeless, runaways, or otherwise just down on their luck and vulnerable. He supplies them with drugs, gets to know them, grooms them, and then has sex with them, whether they consent or not, or whether they're able to consent or not.

In closing argument, the prosecutor returned to that theme:

> As I stated before to you in opening, Ronald Brennan is a sexual predator. He preys on vulnerable teenage boys who are homeless, drug users, runaways, or otherwise down on their luck. He supplies them with drugs, grooms them, gives them a place to stay, and then has sex with them, whether they consent or not, or whether they're able to consent or not.

The prosecutor later continued and expanded on her narrative of events:

> And we only heard, right, sort of this maybe one-month, one-month to two-month time period; right? I mean, Ronald Brennan said he's been a drug user in this culture for 30 years. We only got this one-to-two-month sort of snapshot into his life, and that's what you're deciding things on here is that snapshot. But even that, right, I mean, consider that culture. Consider if he does want to have sex with younger boys, who is he going to choose; right? Who is he going to single out?
> It's not going to be your school valedictorian kid from a good home, stable environment, does good in school, has a supportive family. No. It's going to be these kids who are on the street, right, homeless, vulnerable. They need drugs. He has drugs. That's how he gets them to him. Gives them drugs, and that keeps them with him; right? They need the drugs. He wants the sex from them. It works out for him.

In rebuttal closing, the State reiterated its argument yet again that Brennan was preying on particularly vulnerable youth:

> Like I said, if they were good kids from strong families with support, weren't sort of either drug users or runaways out on the street, needing a place to stay or needing drugs or needing both, they wouldn't have ended up in the hands of Mr. Brennan; right? They wouldn't have ended up there. Of course they're troubled. These are the exact people that, if you are somebody who wants to have sex, engage in a sexual relationship with young boys, these are the exact people that you would choose. Of course they're troubled, you wouldn't expect them not to be. Of course it makes sense that they're troubled youth.

Brennan's counsel did not object to any of these statements at trial.

The jury acquitted Brennan on both rape charges, found him guilty of both controlled substance delivery charges and further found by special verdict form

that he made both deliveries with sexual motivation. The trial court found that Brennan had an offender score of 21, which made his sentencing range 124+ to 144 months in prison, with a mandatory term of 36 months of community custody.[1] The sexual motivation enhancements carried an additional 24 months, consecutive to the base sentence imposed. The trial court imposed an exceptional sentence by ordering 105 months on each count, followed by the mandatory enhancement time, and running those sentences consecutively for a total of 258 months in prison. Brennan timely appeals his conviction.

ANALYSIS

I.    Opening and Closing Argument by the State

Brennan avers the State committed prosecutorial misconduct by making comments in opening and closing statements designed to inflame the jury and decide the verdict on improper bases, and that such conduct deprived him of his right to a fair trial.

In a prosecutorial misconduct claim, the burden is on the defendant to establish that the challenged conduct was improper and prejudicial in the context of the entire record. State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). To demonstrate prejudice, Brennan must prove that there exists a substantial likelihood that the misconduct affected the jury's verdict. Id. "Defense counsel's failure to object to the misconduct at trial constitutes waiver on appeal unless the misconduct is 'so flagrant and ill-intentioned that it evinces an enduring

---

[1] 124+ refers to 124 months and one day as the low end of the sentencing range for this offense, based on an offender score of nine or higher, under the Sentencing Reform Act of 1981, Chapter 9.9A RCW.

and resulting prejudice' incurable by a jury instruction." State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)).  Here, Brennan did not object at trial, so we must determine whether each challenged statement was improper, and if so, whether it was prejudicial.  If the statement was prejudicial, we must then decide whether it could have been cured by instruction to the jury.

A.       Prejudicial Nature of the Conduct by the Prosecutor

"[A] prosecuting attorney represents the people and is presumptively to act with impartiality 'in the interest only of justice.'" Id. at 746 (quoting State v. Reed, 102 Wn.2d 140, 147, 684 P.2d 699 (1984) (internal quotations omitted)). "Defendants are among the people the prosecutor represents.  The prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated." State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011).  A prosecutor is required to "seek convictions based only on probative evidence and sound reason." State v. Casteneda-Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991).

"[A] prosecutor engages in misconduct when making an argument that appeals to jurors' fear and repudiation of criminal groups or invokes racial, ethnic, or religious prejudice as a reason to convict." State v. Perez-Mejia, 134 Wn. App. 907, 916, 143 P.3d 838 (2006).  "[I]nflammatory remarks, incitements to vengeance, exhortations to join a war against crime or drugs, or appeals to prejudice or patriotism are forbidden." Id.  "A prosecutor may not suggest that evidence not presented at trial provides additional grounds for finding a defendant

guilty." State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). "References to evidence outside of the record and bald appeals to passion and prejudice constitute misconduct." Fisher, 165 Wn.2d at 747. "Allegedly improper arguments should be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument and the instructions given." Russell, 125 Wn.2d at 85-86.

Here, Brennan focuses on multiple comments made by the prosecutor in opening and closing statements. The first is the State's repeated reference to Brennan as a "sexual predator." In the context of this label, the prosecutor went on to argue that Brennan "preys on vulnerable teenage boys who are drug users, homeless, runaways, or otherwise just down on their luck and vulnerable," as opposed to a "school valedictorian kid from a good home, stable environment, [who] does good [sic] in school, has a supportive family."

Brennan likens these comments to those where a prosecutor compared the accused to an animal, which have been deemed improper by this court and others. See State v. Rivers, 96 Wn. App. 672, 981 P.2d 16 (1999). However, in a recent unpublished opinion, this court clarified that the holding in Rivers does not suggest that, without more, a prosecutor referring to a defendant as a "predator" is per se misconduct.[2] We adopt that interpretation of Rivers and do not find that the label of sexual predator was improper as it fit with the theory of the State's case against Brennan as to the possible exploitation of A.H. and R.F. for Brennan's sexual gratification, and was a reasonable inference based on some of the witness

_____

[2] See State v. Leyva-Abitia, No. 76423-3-I, slip op. at 13-17 (Wash. Ct. App. Feb. 25, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/764233.pdf

testimony elicited at trial.  The same is true as to the comment regarding vulnerable youth.    There was testimony about A.H. and R.F.'s turbulent home lives, experiences with poverty and drug abuse, and involvement in the juvenile justice system.   The prosecutor's characterization of them as "down on their luck and vulnerable" is a reasonable inference based on the evidence in the record.

However, the prosecutor chose to go further and discuss who Brennan did not seek out, without any basis in evidence for such a claim that he made some sort of targeted choice of one type of individual to pursue sexually or socially over another.   The responsibility of a prosecuting attorney is a heavy one as they are tasked with bringing the full weight of the State of Washington to bear on an individual and their liberty. See Reed, 102 Wn.2d at 146-47.  While a prosecutor may, and should, vigorously argue their case, they are certainly constrained by the evidence presented and must balance what argument is necessary in the interests of justice with their obligation to ensure that convictions are secured only after a fair trial. See Monday, 171 Wn.2d at 676; See also Castaneda-Perez, 61 Wn. App. at 363.

The prosecutor argued that Brennan selected R.J and A.H. over other youth; "[w]ho is he going to single out? It's not going to be your school valedictorian kid from a good home, stable environment, does good in school, has a supportive family."  There is no evidence in the record of a process by Brennan to single people out.  The testimony clearly established how he came into contact with A.H. and R.J. through people they knew in common.  There was no evidence presented that Brennan was even in contact with youth fitting the prosecutor's description as

valedictorians from good homes with stable families, much less that he declined to interact with them in favor of the more vulnerable A.H. and R.J. This statement by the prosecutor leaps beyond a reasonable inference and appears designed to inflame jurors and therefore is improper.

Next Brennan identifies as misconduct the following statement by the prosecutor: "I mean, Ronald Brennan said he's been a drug user in this culture for 30 years. We only get this one-to-two-month sort of snapshot into his life, and that's what you're deciding things on here is that snapshot. But even that, right, I mean, consider that culture." This statement is out of line with a prosecutor's duty to "seek convictions based only on probative evidence and sound reason." Casteneda-Perez, 61 Wn. App. at 363. The prosecutor is directly suggesting the jury should speculate about Brennan's life outside of the charging period for the case and to further contemplate "that culture" at large as a part of their deliberation process. The prosecutor offered a cursory acknowledgment that the jury is to only decide things on this "snapshot" of the timeframe established by the actual charges brought in the case, but argued well beyond such. There was no legal justification for such a statement. Further, it is impermissible to seek to convict someone based on their association with a culture, especially one as ill-defined as here. See State v. Ramos, 164 Wn. App. 327, 335-42, 263 P.3d 1268 (2011). We find the comment an improper attempt to both persuade the jury to inappropriately consider their own speculation as to events and experiences outside of the evidence presented at trial and to secure a conviction based on Brennan's association with a particular

- 10 -

culture, rather than proof beyond a reasonable doubt of the crimes charged by the State.

B.      Whether the Prejudice was Able to be Cured with an Instruction

To prevail on his prosecutorial misconduct challenges, without having preserved them through objection at trial, Brennan must also establish prejudice from the improper comments by the State such that an instruction to the jury could not have cured it.

> If the defendant did not object at trial, the defendant is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill[-]intentioned that an instruction could not have cured the resulting prejudice. Under this heightened standard, the defendant must show that (1) "no curative instruction would have obviated any prejudicial effect on the jury" and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict."

State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012) (quoting Thorgerson, 172 Wn.2d at 455) (internal citations omitted).

Brennan was acquitted of both rape charges and convicted of two counts of distribution of a controlled substance to a minor, each with a sexual motivation enhancement.  In the context of the trial as a whole, it appears that, had the collective inflammatory comments by the prosecutor been entirely successful with the jury, the comments would likely have led to a conviction on the rape charges. The statements centered on Brennan's life within a particular culture associated with drugs, coupled with assertions that he preyed on vulnerable boys within that context in order to have sex with them.  Due to the nature of the charges Brennan faced at trial, and particularly the nature of the sexual motivation enhancement

filed with those for which he was ultimately convicted, the misconduct identified here "'had a substantial likelihood of affecting the jury verdict.'" Id.

The court in Emery went on to explain that "[r]eviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill[-]intentioned and more on whether the resulting prejudice could have been cured." Id. at 762. Here, the court did provide the standard jury instructions prior to closing argument. This included an instruction based on Washington Pattern Instruction 1.02, which includes general admonitions to decide the case on the evidence, that arguments of counsel are not evidence and not to let emotions overcome a rational thought process. This direction from the bench prior to closing argument is procedurally distinct from a curative instruction given by a judge directly in response to an improper statement and often shortly after it has occurred. When analyzing the impact of a curative instruction, we presume the jury will follow the court's instructions. State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Had a jury been expressly instructed to disregard the State's invitation to "consider that culture," or speculate about a selection process by Brennan between "a school valedictorian kid from a good home" and "vulnerable teenage boys who are drug users, homeless, runaways, or otherwise just down on their luck," and directed them to restrain their deliberation to the evidence presented, we presume that they would have.

Brennan's argument on this issue rests on cases that are distinguishable. He primarily relies on this court's opinion in State v. Powell which, after reversing and dismissing on other grounds, determined that the improper comments by the

State in their rebuttal closing denied Powell a fair trial. 62 Wn. App. 914, 816 P.2d 86 (1991). There, the court determined that the State admonished the jurors "that a not guilty verdict would send a message that children who reported sexual abuse would not be believed, thereby 'declaring open season on children.'" Id. at 918. Here, the State's argument strayed outside of the acts it charged against Brennan and ultimately presented to the jury, by inviting speculation about Brennan's selection of a certain class of youth over another and to "consider that culture" in their deliberation of the charges, but unlike the prosecutor in Powell, did not go so far as to suggest the jury send a message or protect an entire class of victims with its verdict.

Brennan's reliance on State v. Belgarde is similarly misplaced. 110 Wn.2d 504, 755 P.2d 174 (1988). The prosecutor in Belgarde emphasized the defendant's membership in the American Indian Movement (AIM), described it as "a group of butchers and madmen who killed indiscriminately," and said "'the people are frightened of AIM,' and that AIM is 'something to be frightened of when you are an Indian and you live on the reservation.'" Id. at 508. The prosecutor further stated "I remember Wounded Knee, South Dakota. Do any of you? It is one of the most chilling events of the last decade. You might talk that over once you get in there." Id. at 507. The Supreme Court explained that these comments were prejudicial because they were intended to instill fear and to direct the jury to consider information that was improper, but also because the prosecutor's statements amounted to testimony that denied Belgarde "his right to confront and cross examine 'witnesses.'" Id. at 509. The challenged statements in Belgarde, a

- 13 -

mix of racially-charged generalizations about an entire social movement and express suggestion from an attorney representing the State to consider politically controversial events for which Belgarde was not on trial, went well beyond the improper statements by the prosecutor here.

While prejudicial and carrying a substantial likelihood of affecting the verdict, we are unpersuaded that the prosecutor's comments here were such that they could not have been cured by an instruction to disregard them and only consider the elements of the charges, evidence presented and the law of the case as provided by the judge. Brennan fails to overcome the presumption that a jury follows instructions from the court or demonstrate that the improper conduct by the State was so egregious that it could not be cured by instruction, as in Powell or Belgarde.

II.    Statement of Additional Grounds

A defendant may provide a pro se statement of additional grounds (SAG) for review. RAP 10.10. However, there are practical limitations to our review of a SAG. For example, "we consider only issues in a [SAG] that adequately inform us of the nature and occurrence[s] of the alleged errors." State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013), (reversed on other grounds by State v. Calvin, 183 Wn.2d 1013, 353 P.3d 640 (2015)). "Although reference to the record and citation to authorities are not necessary or required, the appellate court will not consider an appellant's SAG if it does not inform the court of the nature and occurrence of alleged errors." State v. Gauthier, 189 Wn. App. 30, 43-44, 354 P.3d 900 (2015). "[I]ssues that involve facts or evidence not in the record are properly

- 14 -

raised through a personal restraint petition, not a statement of additional grounds." Calvin, 176 Wn. App. at 26. However, issues addressed on direct appeal may not be renewed in a personal restraint petition, unless certain specific requirements are met. See RAP 16.4(d); In re Pers. Restraint Pet. of Haverty, 101 Wn.2d 498, 501-04, 681 P.2d 835 (1984).

A.     Selective Investigation and Prosecution

Brennan first argues in his SAG that he was a subject of selective investigation and prosecution. A criminal prosecution is presumed to be undertaken in good faith and a prosecutor is provided broad discretion in the decision to select which offenses to pursue. State v. Terrovonia, 64 Wn. App. 417, 421, 824 P.2d 537 (1992). To succeed in an unconstitutional selective prosecution claim the defendant must show 1) disparate treatment (i.e. failure to prosecute those similarly situated), and 2) improper motivation for the prosecution. Id. at 422. Improper motivation means a deliberate selection based on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'" State v. Judge, 100 Wn.2d 706, 713, 675 P.2d 219 (1984) (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962)).

Brennan fails to overcome the presumption that this criminal prosecution was taken in good faith. He argues the prosecution failed to similarly prosecute R.F. However, his argument fundamentally acknowledges that the prosecution initiated an investigation into R.F's conduct in addition to his own. This led to the State's exercise of discretion in light of the evidence and ultimate decision not to pursue rape charges against R.F. Further, Brennan does not engage with the

second portion of the test: establishing improper motivation for the prosecution. Though Brennan focuses on his designation as a registered sex offender, under Washington law this has not been recognized as an arbitrary classification. As such, Brennan is unsuccessful on this claim.[3]

### B. Discovery Violations by the State

Brennan next argues that discovery was withheld in his case, specifically a Cellebrite report of A.H.'s cellphone, and that when it was received, it was redacted to remove images that the police believed to constitute child pornography. Brennan acknowledges receipt of the report, which he states resulted in a continuance because of the late disclosure by the State.

CrR 4.7 sets out the State's responsibilities as to discovery in a criminal case. State v. Blackwell, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). In general, the government must disclose "evidence that is material and favorable to the defendant." Id. "If the State fails to disclose such evidence or comply with a discovery order, a defendant's constitutional right to a fair trial may be violated; as a remedy, a trial court can grant a continuance, dismiss the action, or enter another appropriate order." State v. Barry, 184 Wn. App. 790, 796, 339 P.3d 200 (2014). "A trial court exercises discretion when deciding how to deal with a discovery violation." Id. When raising a claim of prosecutorial mismanagement, "a defendant must prove that it is more probably true than not true, that (1) the prosecution failed

---

[3] Brennan adds what appears to be a subsection within his argument on selective prosecution. The subsection seems to attempt to address motions in limine and includes a number of citations to the clerk's papers, however he offers no clear assignment of error or argument to assist this panel in identifying any matter for review.

to act with due diligence, and (2) material facts were withheld from the defendant until shortly before a crucial stage in the litigation process which essentially compelled the defendant to choose between two distinct rights." State v. Woods, 143 Wn.2d 561, 583, 23 P.3d 1046 (2001).

Brennan concedes that the delay in disclosure was remedied by a continuance, which is well within the discretion of the trial court. In fact, the report of proceedings from that hearing makes clear that Brennan expressly agreed to the continuance. He does not provide any argument as to how that continuance compelled him to "choose between two distinct rights," in part because he fails to explain how the evidence in the Cellebrite report was material to his case. Again, Brennan does not engage with the legal test for this issue. Finding no abuse of discretion, we will not disturb the trial court's ruling on the remedy as to the late disclosure.

Brennan also points out that when the Cellebrite report was ultimately received, certain photographs were redacted as investigating officers deemed them to be child pornography. Such withholding is not a discovery violation if counsel may still meaningfully access the material. See State v. Boyd, 160 Wn.2d 424, 158 P.3d 54 (2007). Brennan makes no effort to demonstrate the probative value of the purported images of child pornography or relevance to the charges he faced at trial. Neither does he argue that his counsel was denied an opportunity to view the images as an alternative to receiving copies of them with the Cellebrite report. In State v. Boyd, our Supreme Court clearly held that certain reasonable restrictions on dissemination of evidence that may also constitute child

pornography does not conflict with the State's discovery obligations under CrR 4.7.
Id. We find no error here.

C.    Evidentiary Ruling

Brennan next raises an argument regarding his purported disclosures to a
detective, the redaction of those statements from the interview transcript, and
ultimately, their exclusion from trial. While he provides citations to the record,
those portions of the record do not contain the information he describes in this part
of the SAG. Absent information to review and, more importantly, any indication of
the prejudice such conduct would have had on Brennan even if the record citations
supported his allegations, we decline to review this matter.

D.    Instructional Error

Brennan renews his argument as presented in the trial court that it was
improper for the court to sua sponte provide instruction for accomplice liability as
to both counts of distribution of a controlled substance to a person under the age
of 18. As an initial matter, "[w]e review the court's choice of jury instructions for
abuse of discretion." State v. Butler, 165 Wn. App. 820, 835, 269 P.3d 315 (2012).
Jury instructions are generally sufficient when supported by substantial evidence,
correctly state the law, and allow the parties an opportunity to satisfactorily argue
their theories of the case. State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550
(2002).

Neither party sought inclusion of the accomplice liability instruction in this
case, but the court advised counsel of an intention to so instruct at the close of

testimony, took argument and allowed for briefing on the court's proposed instruction. The trial court may exercise its discretion to instruct the jury sua sponte based on the evidence adduced at trial, provided that such instruction is otherwise proper under case law. Butler, 165 Wn. App. at 835-836; See also State v. Malone, 20 Wn. App 712, 582 P.2d 883 (1978). Here, defense counsel filed a written objection later that day and further argument was taken up the next morning.

The transcript is clear that the court's basis for giving the instruction was that Brennan testified he helped third parties, individuals he gave rides to, who then on occasion provided a controlled substance to R.F. in exchange for the ride from Brennan. The reasonable inference from the testimony was that Brennan ultimately benefitted by facilitating another's delivery of drugs to R.F. Instructions referencing accomplice liability were directly supported by Brennan's testimony and properly stated the law. Further, despite defense claims to the contrary in its objection to the instructions, it appears from the record that Brennan was able to argue his theory of the case; that R.F. procured his own drugs. The written defense objection may have misunderstood the court's reasoning for giving the instruction as it focused on R.F. as the principal, rather than other third parties who were receiving rides from Brennan. The court did not err by instructing the jury as to accomplice liability.

E.      Denial of Defense Motion to Vacate

Without argument as to specific error, Brennan appears to seek review of the judge's denial of the defense motion to vacate and arrest judgment by simply referring this court to the motion and portion of sentencing hearing in the record.

Defense counsel filed a written motion after trial and the State objected based on timeliness. However, the judge took up the motion on the merits and heard argument from the parties before proceeding to sentencing.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. We defer to the trier of fact, who makes credibility determinations and generally weighs the evidence. State v. Martinez, 123 Wn. App. 841, 845, 99 P.3d 418 (2004).

Brennan fails to articulate any error committed by the trial court in ruling on his motion for arrest from judgment. When construed in the light most favorable to the State, the evidence at trial, set out at length in the facts section of this opinion, was sufficient to convict and supported the special verdict. The record demonstrated that the court engaged in the proper legal analysis when considering the defense motion and we find no error.

F.      Post-Conviction No Contact Order

Brennan next alleges error relating to the issuance of a lifetime no contact order which prohibits him from contacting R.F. He states that the judge ordered a 20 year no contact order, but that the State "issued" a lifetime order. Again, the citations to the record provided in this section of the SAG do not correlate to the documents Brennan references. However, the judgment and sentence appears to

- 20 -

offer some critical facts that resolve this challenge. Section 4.2 of the judgment and sentence is titled "COMMUNITY CUSTODY" and expressly notes no contact with R.F. as a condition of community custody supervision upon Brennan's release from prison; it also cross-references section 4.5.

Section 4.5 of the judgment and sentence is titled "NO CONTACT" and the first checked subsection directs no contact with R.F. for a period of 240 months, which coincides with the sentence imposed on the case and the oral ruling of the court. The immediate next subsection indicates that a separate post-conviction order would also be entered. The record contains this separate post-conviction order, entered the date of Brennan's sentencing hearing, which imposes a lifetime prohibition on contacting R.F. This is consistent with the prosecutor's request for such an order during oral argument at sentencing. The sentencing judge issued the lifetime no contact order, not the prosecutor, and both the separate post-conviction order and prohibition on contact as a condition of community custody are well within the sentencing authority of the trial court. Brennan fails to establish error.

G.      Exceptional Sentence Beyond the Standard Sentencing Range

Brennan argues that the court improperly overruled his written objection to the imposition of an exceptional sentence above his standard sentencing range and erred by rejecting his request to impose an exceptional sentence below the standard range. While Brennan offers no specific argument as to this grounds for review and simply refers this court to the written objection in the record, because

exceptional sentences are strictly limited by statute we are able to deduce the likely challenge based on the limited options available under the law.

The trial court provided two independent bases for the imposition of an exceptional sentence upward. The first was the jury's finding of sexual motivation by special verdict pursuant to RCW 9.94A.533(8), which is one of the enumerated statutory bases for an exceptional sentence under RCW 9.94A.535(3)(f). Additionally, the court determined that the separate statutory basis contained in RCW 9.94A.535(2)(c) was implicated by Brennan's offender score, which would have caused one of the crimes to result in essentially no independent punishment. The court properly entered written findings of fact and conclusions of law as to the imposition of the exceptional sentence, as required by statute. The court properly exercised discretion at sentencing based on its consideration of the evidence at trial, findings of the jury and arguments of counsel. The trial court did not err in imposing an exceptional sentence above the standard range or rejecting Brennan's argument for a downward deviation.

H.      Charging Dates in the Amended Information

In a criminal case, the accused has a constitutional right to know the charges against them. U.S. CONST. amend VI; WASH. CONST. art. I, § 22. The information is constitutionally sufficient "only if all essential elements of a crime, statutory and non-statutory, are included in the document." State v. Vangerpen, 125 Wn.2d 782, 787, 88 P.2d 1177 (1995). "[I]t is sufficient to charge in the language of a statute if the statute defines the offense with certainty." State v. Kjorsvik, 117 Wn.2d 93, 99, 812 P.2d 86 (1991). "[D]efendants should not have to

search for the rules or regulations they are accused of violating." Id. at 101. If "a charging document is challenged for the first time on appeal, we construe it liberally." State v. Pry, 194 Wn.2d 745, 752, 452 P.3d 536 (2019). "[A]mendment of the date is a matter of form rather than substance, and should be allowed absent an alibi defense or a showing of other substantial prejudice to the defendant." State v. Debolt, 61 Wn. App. 58, 62, 808 P.2d 794 (1991).

Brennan argues that the amended information provided on October 22, 2018 was deficient exclusively based on the dates provided as to some of the charged crimes; that the date range on the charging document incorporates a period of time prior to the date he alleges he first met R.F. We are not persuaded. The to-convict instructions as to both counts of distribution of a controlled substance to a person under the age of 18 for which Brennan was convicted stated "[t]hat on or about March 1, 2017, through on or about July 25, 2017" which matches the date range utilized in the charging document for each count. Further, review of the trial testimony demonstrates that the witnesses asserted that the acts occurred within the charged date ranges for the corresponding crimes. The amended information sufficiently informed Brennan of all essential elements of the crimes charged. The jury found that the testimony proved that the charged acts occurred within the time range set out by the State. That the date range may have been broader than Brennan believed appropriate is inconsequential, as the jury was persuaded beyond a reasonable doubt that counts 3 and 4 occurred within the charging period provided by the State. As such, we find no error.

I.      Juror Knowledge of Shackling or Custodial Status

Brennan claims a potential juror disclosed his custodial status to the other members of the venire.  The record does not support this assertion.  Brennan clearly states that a potential juror "allowed the Jury [sic] to know of my custody status."  However, the transcript of voir dire includes the following exchange between Juror 70 and the court during individual examination after Juror 70 indicated that he knew the transport deputies in the courtroom and speculated that they may have been there to transport Brennan:

> THE COURT: . . . Juror Number 70, I guess I have one follow-up question for you: Have you mentioned to any of the other jurors that you happen to know Officer Wold or the other officer?
>
> PROSPECTIVE JUROR: I have not.
>
> THE COURT: Okay. I would direct that you continue to not mention that to anyone.  And, again, as I have indicated, do not have any discussion about the case whatsoever at this point.
>
> PROSPECTIVE JUROR: Yep.

Juror 70 was dismissed, without objection by the State, out of an abundance of caution immediately after his individual examination by the parties.  Jurors are presumed to follow the court's instructions.  Stein, 144 Wn.2d at 247.  Brennan fails to provide any argument, other than his plain assertion to the contrary of the statements in the record.  This is insufficient to overcome the presumption that Juror 70 followed the court's instruction.  As such, we find no error.

All other citations to the record provided by Brennan on this issue either highlight the court's discussion of transport logistics to avoid jurors observing him being transported by deputies or, as appears to be Brennan's focus, the custodial

- 24 -

status of witness Douglas Sanders. Brennan's citations to the record regarding Sanders emphasize an incident where a juror made a comment while they were being escorted to the jury room. The statement was conveyed to the judge by the clerk and the judge brought the matter to counsel on the record. The juror's comment was paraphrased as explaining that the reason the jury was going back to the jury room was because transport deputies would be handcuffing Sanders to take him out of the courtroom. Sanders was a witness on behalf of the State who had been brought in on a material witness warrant and Brennan fails to demonstrate how Sanders' custodial status, or the jurors' knowledge of such, prejudiced him.

    J.    Admission of Jail Phone Calls at Trial

    In a related ground for review, Brennan challenges the trial court's admission of jail phone calls at trial on the basis that it allowed the jury to know his custodial status prior to trial. Brennan provides no specific argument as to why the admissions were improper beyond that it allowed the jury to know he had been in custody. Jail phone calls are routinely, and properly, admitted into evidence in criminal trials. See State v. Archie, 148 Wn. App. 198, 199 P.3d 1005 (2009). Without further argument as to the prejudice or error resulting from the admission of this evidence, we are unable to review this issue.

    K.    Exclusion of Evidence of Possible Criminal Conduct by Victim

    Brennan next argues that he was not allowed to present evidence as to R.F.'s possible criminal liability. He indicates that he would have introduced

evidence of criminal conduct as impeachment evidence as to one of the named victims. The "scope of such cross examination [remains] within the discretion of the trial court." Russell, 125 Wn.2d at 92 (alterations in original). The record demonstrates that the court engaged in the proper legal analysis by weighing the victim's rights and privileges against Brennan's as the defendant in the instant case.

The lynchpin of this issue rests with R.F.'s Fifth Amendment privilege, which was clearly implicated. R.F. had a pending felony case for the alleged theft of a firearm at the time of his testimony in Brennan's trial. The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, provides, "no person . . . 'shall be compelled in any criminal case to be a witness against himself.'" Malloy v. Hogan, 378 U.S. 1, 7, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964) (internal quotations omitted). "The availability of the Fifth Amendment privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." State v. Post, 118 Wn.2d 596, 604, 826 P.2d 172 (1992).

The record demonstrates that the trial court acted within its discretion to admit and exclude evidence relating to this alleged conduct by R.F. The court allowed the broad fact of pending charges into evidence, but would not allow further examination to that for which R.F. had a Fifth Amendment privilege. R.F.'s counsel on that pending criminal matter was also present for this portion of the proceedings and addressed the court in regard to R.F.'s potential need for

- 26 -

invocation of privilege. There was no abuse of discretion as to the trial court's exclusion of this particular evidence.

L.     Ineffective Assistance of Counsel

Brennan's final SAG argument avers that his counsel was ineffective for failing to call three specific witnesses at trial who had been interviewed by the defense. "To prevail on a claim of ineffective assistance of counsel, [a defendant] must establish both deficient performance and prejudice." State v. Jones, 183 Wn.2d 327, 330, 352 P.3d 776 (2015) (alterations in original). Brennan has the burden to establish that his counsel's representation fell below an "objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Wash., 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674 (1984). "Courts engage in a strong presumption counsel's representation was effective." State v. McFarland, 127 Wn.2d. 322, 335, 899 P.2d 1251 (1995). We look to the entire record in review of counsels' performance. State v. Ciskie, 110 Wn.2d 263, 284, 751 P.2d 1165 (1988); Jones, 183 Wn.2d at 331.

Brennan's claim fails on its face, as the choice as to which witnesses to call at trial is well-established as a tactical decision squarely within counsel's discretion. See In re Pers. Restraint of Stenson, 142 Wn.2d 710, 741, 16 P.3d 1 (2001) ("[T]he decision to call witness rests with counsel, not with the defendant."). Brennan acknowledges that his attorney interviewed the witnesses, which could have provided numerous bases for counsel's decision not to introduce testimony from any of those individuals. Pretrial interviews with potential witnesses can

reveal all manner of potentially damaging information; an attorney may be privy to criminal histories that could be utilized for impeachment of that witness, the witness may provide an account that contradicts prior statements or, worse, exposes the defendant to further criminal liability. Any of these scenarios necessarily place counsel in the position of having to weigh the potential value of the testimony against the possibility of impeachment or other damage to their client or their case. This is the practical underpinning for the body of case law holding that selecting which witnesses to call at trial is a proper tactical decision by counsel. As such, Brennan fails to demonstrate deficient performance by counsel and we do not find that he was ineffective.

Affirmed.

WE CONCUR:

Mann, C.J.